# Staunton.

## Roselle v. Commonwealth.

### September 16, 1909.

1. Evidence—*Parol Evidence to Contradict Writing—Rights of Third Persons.*—The rule that parol evidence will not be received to vary, alter or contradict the terms of a valid written contract, is applicable only to controversies between the parties to the contract, or their privies. It cannot affect third persons.

2. Interstate Commerce—*Sale of Property Already in State.*—The test applied to determine whether personal property sold is to be regarded as belonging to interstate or to intrastate commerce is whether or not the property which is the subject of the sale is within the jurisdiction of the State at the time the sale is made. If it is, then it is an intrastate transaction, and subject to State regulation.

Error to a judgment of the Corporation Court of the city of Charlottesville convicting plaintiff in error peddling without a license.

*Affirmed.*

The opinion states the case.

*Harmon & Walsh,* for the plaintiff in error.

*Wm. A. Anderson, Attorney General,* for the Commonwealth.

Harrison, J., delivered the opinion of the court.

The warrant in this case charges that the plaintiff in error did carry from place to place in the city of Charlottesville, picture frames, and did sell and barter the same, without first obtaining a license, in violation of the law imposing a tax upon peddlers.

The judgment of the police justice being adverse to the

plaintiff in error, an appeal was taken to the corporation court of the city of Charlottesville, where the whole matter of law and fact was submitted to the court, and the judgment of conviction complained of rendered. The case is, therefore, before this court as upon a demurrer to evidence.

It appears that the Chicago Portrait Company, an Illinois corporation, sent out its soliciting agents to take orders for portraits and picture frames, which were to be subsequently delivered. A number of these orders were placed in the city of Charlottesville, among others, one with J. M. Burch. The soliciting agent of the company gave to each person from whom he secured an order a writing furnished by the company and signed by himself, stipulating that on or about a day named it would deliver a finely finished portrait for the sum of $——, which the purchaser agreed to pay upon delivery. This memorandum concludes as follows: "In consideration of said purchase, and as a part of said contract of sale, the company agrees to deliver said portrait in a suitable frame, for which the purchaser agrees to pay the wholesale price. If the purchaser fails to pay for said frame upon delivery, the title thereto shall revert to the company, and the purchaser agrees to deliver the same forthwith to the company's agent." This paper is signed alone by the agent as salesman of the company.

The plaintiff in error was representing the Chicago Portrait Company, and it is contended that he was merely delivering goods that had been previously sold by his principal. J. M. Burch, from whom an order had been secured, was introduced as a witness on behalf of the Commonwealth, and testified that he had given an order to the soliciting agent of the company for a portrait, but that he had not ordered a frame; that the entire negotiation and sale to him of the picture frame, which he bought, was begun and concluded with the plaintiff in error at the time the portrait was delivered to him.

The first assignment of error is to the action of the corporation court in refusing to exclude the testimony of this

witness, upon the ground that his evidence contradicted the terms of a valid written instrument.

Without stopping to consider whether or not the writing which was left with the witness and to which we have adverted shows a concluded sale of a picture frame, it is sufficient to say that the general rule of evidence here invoked is not of universal application, and that it only applies to controversies between parties to the contract or instrument which is the subject matter of the controversy and their privies. It does not apply to controversies between parties to the writing and third persons. 1 Greenleaf on Evidence, sec. 279; 1 Starkie on Ev. (10th ed.) 728; 2 Whart. Law of Ev., secs. 920, 923; 17 Cyc. pp. 749-750; *Bruce* v. *Lumber Co.,* 87 Va. 381, 13 S. E. 153, 24 Am. St. Rep. 657; *Barreda* v. *Silsbee,* 21 How. 169, 16 L. Ed. 86.

In this case the Commonwealth was not a party or privy to the writing relied on, and the evidence objected to was competent on her behalf to sustain the prosecution.

As said in Greenleaf on Ev., *supra*: "The rule under consideration is applied only (in suits) between the parties to the instrument, as they alone are to blame if the writing contains what was not intended, or omits that which it should have contained. It cannot affect third persons, who, if it were otherwise, might be prejudiced by things recited in the writings, contrary to the truth, through the ignorance, carelessness or fraud of the parties; and who, therefore, ought not to be precluded from proving the truth, however contradictory to the written statements of others."

· The second ground of error involves the contention that the revenue law of Virginia, so far as applied in this case, operated as a hinderance of and interference with interstate commerce, and was, therefore, void, as being in contravention of the commerce clause of the Federal Constitution. In support of this contention, *Caldwell* v. *North Carolina,* 187 U. S. 622, 47 L. Ed. 336, 23 Sup. Ct. 229; *Rearick* v. *Penn.,* 203 U. S. 507,

51 L. Ed. 295, 27 Sup. Ct. 159, and other cases in line therewith, decided by the Supreme Court, are relied on.

We recognize the controlling effect of these decisions and have no disposition to controvert the doctrine announced by them. There can be no question that the transactions which were the subject of investigation in *Caldwell* v. *North Carolina,* and in the class of cases to which that case belongs, must be considered in the light of those decisions as interstate transactions. The test which seems to determine whether the transaction is to be regarded as belonging to interstate or to intrastate commerce is whether the property which is the subject matter of the sale is within the jurisdiction of the State at the time the sale is made.

The evidence in this case shows that the plaintiff in error had in his possession a considerable consignment of pictures and picture frames from the Chicago Portrait Company. It further shows that none of those from whom orders were secured were obliged to take frames, but that the purchase of a frame was the subject of negotiation at the time the picture was delivered. The testimony of J. M. Burch, which must be taken · as true, shows that the entire negotiation and sale of the picture frame which he bought was begun and concluded in Charlottesville, Va., where the frame was.

We will conclude the consideration of this assignment of error with what was said in the case of *Chrystal* v. *Mayor, etc.,* of *Macon, Ga.,* 108 Ga. 27, 33 S. E. 810, which is entirely pertinent and applicable to the facts of the case at bar.

"The Chicago Portrait Company carried on, through its agents in this State, a business, the nature of which is sufficiently indicated in the headnotes. Chrystal, one of its delivering agents, was in the municipal court of the city of Macon, convicted of 'doing business in said city without a license.' The only defense he set up was that the ordinance under which he was prosecuted was violative of the interstate commerce clause of the Federal Constitution, and his petition for *certiorari* pre-

sented for adjudication this question only. The judge of the superior court refused to sanction the petition, and the cause is here for review.

"We have, without serious difficulty, reached the conclusion that, in so far as the business in question related to the sale and delivery of picture frames, it was certainly outside the scope and operation of the above mentioned clause of the Constitution of the United States. No customer of the portrait company agreed to purchase or was bound to take and pay for a picture frame, unless he chose to do so after inspecting the portrait which he had ordered; and in case he then desired to purchase a frame, he selected it from a stock of frames which had already been shipped from Illinois into Georgia, consigned to and received by the company's agent here. The mere fact that at the time of ordering the picture the customer may have reserved the right to select and buy a picture frame is of no consequence whatever. Nor does it matter that the so-called privilege of purchasing picture frames from this company was exclusively in those who had ordered pictures. In no view of the matter could it be fairly said that a binding contract of any description relative to the purchasing of a picture frame existed between the company and any purchaser until a sale negotiated in this State was actually effected here. It was argued that a portrait and its frame were so intimately connected that both together really constituted a unit or single thing. This may be quite true, after a portrait is placed in a frame; but, manifestly, until this has been done they are separate and distinct things, each having its own independent commercial value, and the scheme of the very business under discussion distinctly recognizes that this is so. The company unquestionably sells portraits without selling frames; and, when it does sell a frame, that is a complete transaction in and of itself."

Entertaining these views as to the facts of the case at bar, we are of opinion that the judgment complained of is right, and must be affirmed.

*Affirmed.*