## EDDINGS v. SOUTHERN DAIRIES.
### Civil Action No. 595.

District Court, E. D. South Carolina, Columbia Division.

Jan. 12, 1942.

W. K. Charles, of Greenwood, S. C., for plaintiff.

John J. Carmody, of Washington, D. C., and Heyward Brockinton, of Columbia, S. C., for defendant.

George A. Downing, Regional Atty., United States Department of Labor, Wage and Hour Division, of Atlanta, Ga., amicus curiae.

WYCHE, District Judge.

This action was brought by plaintiff individually and on behalf of certain other employees named in the body of the complaint, against the defendant for unpaid minimum wages and unpaid overtime compensation, and for an additional equal amount as liquidated damages under the Fair Labor Standards Act of 1938, Pub.No. 718, 75th Congress, 52 Stat. 1060, 29 U.S.C. A. § 201 et seq.

The matter before me is a motion by the defendant to dismiss on the ground, among others, that the provisions of Sections 6 and 7 of the Act do not apply to all employees of the defendant, but cover only such as are engaged in interstate commerce, or in the production of goods for interstate commerce, and that the complaint fails to disclose that the plaintiff, and those whom he claims to represent, were, as a matter of law, so engaged during the period covered by the complaint.

While the complaint in this cause alleges in general terms that the plaintiff, and those for whom he sues, are engaged in interstate commerce and in the production of goods for interstate commerce, the allegations so alleging must be taken in connection with the other allegations of the complaint where plaintiff attempts to particularize the duties of the employees involved in this controversy, and to state in what manner they are engaged in interstate commerce and in the production of goods for interstate commerce[1] so that the complaint should read as follows: That the plaintiff and those for whom he sues are engaged in interstate commerce and in the production of goods for interstate commerce in that defendant is a corporation organized and existing under and by virtue of the laws of the State of Delaware, doing business within the State of South Carolina, and having offices and agents for the transaction of its business at Columbia, South Carolina, and at all times hereinafter mentioned, operated out of Columbia in the County of Richland and State aforesaid, a wholesale distributing plant for the distribution of frozen foods, consisting of fruits, vegetables, meats, chickens, and fish, which when thawed have the same flavor as fresh foods; also ice cream mix, a base for making ice cream, and including specialties such as pop-cicles, sandwiches, fountain syrups, concentrated fruits, and fountain supplies, all of which are shipped to the defendant's warehouse from points out of the State of South Carolina. Substantially all of the goods manufactured and distributed by the defendant during the times hereinafter mentioned have been sold, offered for transportation, transported, shipped and delivered from the defendant's plants at Charlotte, North Carolina, and Washington, D. C., to its distributing plant at Columbia, South Carolina. During the work-weeks beginning October 24, 1938, to date, defendant has employed at its Columbia, South Carolina, warehouses approximately ten men and women in the distribution of said sundaes, fruits, meats, etc. The goods distributed by such employees during such period have been sold, offered for transportation, transported, shipped and delivered from defendant's factories and warehouses at Charlotte, North Carolina, and Washington, D. C., to its distributing plant in Columbia, South Carolina. In such business defendant, from October 24, 1938, the effective date of such Fair Labor Standards Act, to April 4, 1941, has employed plaintiff as a shipping clerk, whose duties, among other things, were to place orders for ice cream, sundaes, fruits, meats, etc., to be shipped from

---

[1] See Rules 8(e) and 12(e), Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

Charlotte, North Carolina, and Washington, D. C., to take and keep a complete inventory of all goods on hand and in transit, to keep all books and records of the said office, collect all moneys due it, receive orders from salesmen, deliver to truck drivers, and take their receipts for goods to be delivered and sold, and to do such other things as may be incidental to said employment.

The complaint reveals the process by which the goods are introduced into the State of South Carolina. It alleges that the duties of the plaintiff (an employee of the Columbia distributing plant) include, among other things, "the placing of orders for ice cream, sundaes, fruits, meats, etc., to be shipped from Charlotte, North Carolina and Washington, D. C.," and as necessary and incidental thereto "the taking and keeping of a complete inventory of all goods on hand and in transit". It discloses that the defendant is engaged at Charlotte, North Carolina, and at Washington, D. C., in the manufacture for interstate commerce of frozen foods, such as fruits, vegetables, meats, chickens and fish, and of ice cream mix, fountain syrups, concentrated fruits, etc.; and that it is engaged at Columbia, South Carolina, in the distribution at wholesale of such products, all of which are shipped to it there in interstate commerce from its said extrastate plants, and that the employees in whose behalf plaintiff also brings this action are employed in handling and selling goods at and from the Columbia plant within the State of South Carolina. It is not alleged that the goods are thereafter shipped from South Carolina across State lines, and it is not contended that orders are solicited in South Carolina, and the goods then shipped from without the State direct to the customer, or to an agent for delivery to the customer in fulfillment of specific orders.[2]

I will consider the case of the plaintiff first. The Fair Labor Standards Act, 29 U.S.C.A. § 203(b), defines "commerce" as follows: "'Commerce' means trade, commerce, transportation, transmission, or communication among the several States or from any State to any place outside thereof." In Gibbons v. Ogden, 22 U.S. 1, 9 Wheat. 1, 189, 6 L.Ed. 23, the Supreme Court said: "Commerce, undoubtedly, is traffic, but it is something more—it is intercourse. It describes the commercial intercourse between nations, and parts of nations, in all of its branches. * * * The word 'among' means intermingled with. A thing which is among others, is intermingled with them. Commerce among the states, cannot stop at the external boundary line of each state, but may be introduced into the interior." Later, the Supreme Court reaffirmed this doctrine in Welton v. State of Missouri, 91 U.S. 275, at page 280, 23 L.Ed. 347: "Commerce is a term of the largest import. It comprehends intercourse for the purposes of trade in any and all its forms, including the transportation, purchase, sale, and exchange of commodities * * *."

The scope of the term "engaged in commerce," as used in the Fair Labor Standards Act, even if not regarded as coextensive with the utmost limits of the commerce power of Congress, in my opinion does comprehend transactions of the character of the duties performed by the plaintiff. Even under traditional concepts, the ordering of goods from one state to be transported or introduced into another state has uniformly been considered a part of interstate commerce. Transportation from one state to another has always been considered a standard example of interstate commerce. The placing of orders for goods, which are in another State for the purpose of introducing them into the State from which the order is placed, is interstate commerce. In this case the orders which constitute the first step in the introduction of the goods into the State, are transmitted directly by the plaintiff from Columbia, South Carolina, to the defendant's extrastate factory at Charlotte, North Carolina, or at Washington, D. C., for shipments to be made to defendant's warehouse at Columbia, South Carolina, to be later sold to the public. The fact that the orders placed by the plaintiff may not have been in fulfillment of a sale or a purchase is not material, the orders were for the purpose of having the goods transported, that is, introduced from a foreign State into the State of South Carolina, from which the orders emanated, and when plaintiff

---

[2] Robbins v. Shelby Taxing District, 120 U.S. 489, 7 S.Ct. 592, 30 L.Ed. 694; Brennan v. Titusville, 153 U.S. 289, 14 S.Ct. 829, 38 L.Ed. 719; Rearick v. Pennsylvania, 203 U.S. 507, 27 S.Ct. 159, 51 L.Ed. 295; Crenshaw v. Arkansas, 227 U.S. 389, 33 S.Ct. 294, 57 L.Ed. 565; Real Silk Hosiery Mills v. Portland, 268 U.S. 325, 45 S.Ct. 525, 69 L.Ed. 982.

placed the orders for the commodities to be shipped from Charlotte, North Carolina, and Washington, D. C. to Columbia, South Carolina, and kept a record of all such goods in transit from such places to Columbia, South Carolina, he was engaged in interstate commerce as contemplated by the Fair Labor Standards Act of 1938.

At the argument, and in supporting briefs, plaintiff's counsel contended that even though the goods are received from Washington, D. C., and Charlotte, North Carolina, stored in defendant's warehouse and sold and delivered to dealers or distributors wholly within the State of South Carolina, nevertheless the "flow" in interstate commerce is continued, and the employees handling or selling said goods in South Carolina are covered by the Act.

On the other hand, the defendant's position is that when the goods are received in South Carolina and stored in its warehouse, and sold locally, that interstate commerce has ended.

The scope of the power of Congress to regulate wages and hours and the scope of the Act as written are quite different. That Congress intended to legislate only for those employees who were themselves engaged in commerce, and not merely in occupations which affect commerce is best shown by the legislative history of the Act.

Senate Bill 2475, introduced in the Senate on May 24, 1937, declared it unlawful "for any person to employ under any substandard labor condition any employee engaged in interstate commerce" or in the production of goods intended for transportation, in violation of provisions of the bill. Thus worded, the bill was adopted by the Senate and sent to the House of Representatives. The House by amendment broadened the coverage of the bill by requiring time and a half for overtime for all employees of an "employer engaged in commerce in an industry affecting commerce." 75th Congress, 3rd Session H.—Rep. 2182.

Sections 4 and 5 of the House Bill, (the equivalent of Sections 6 and 7 of the Act as finally enacted, the minimum wage and maximum hours provisions respectively), provided that "every employer engaged in commerce in an industry affecting commerce must pay the minimum wage." "No employer engaged in commerce in an industry affecting commerce shall employ his employees longer than certain hours." But in the conference the clause "industries affecting commerce" was abandoned, and in its conference report the conferees made the following statements: "Section 6 of the conference agreement provides for the establishment of minimum wages for employees engaged in commerce, or in the production of goods for commerce. The House amendment provided for the establishment of the minimum wages if the employer was engaged in commerce in an industry affecting commerce." (Italics added)

The conference draft of the bill, which was finally enacted into law after the Senate had refused to accede to the House amendment, restored the test of coverage contained in the original Senate Bill, by applying the Act to "Employees * * * engaged in commerce or in the production of goods for commerce." Senator Pepper of Florida, a member of the Conference Committee which drafted the Act as adopted, made its limited scope very clear in discussing the terms of Section 7 before the Senate. In answer to an objection to the broad scope of the Act, he said: "I want it distinctly stated that this proposed law is not applicable to all employees of an industry which itself is engaged in interstate commerce. It is applicable only to those employees who themselves are engaged either in interstate commerce, or in the production of goods for interstate commerce, and the contrary theory was definitely rejected by the Committee." 83 C.R. 9168 (Senate—75th Cong. 3rd Sess. June 14, 1938). The Wage and Hour Division and several Federal Courts have likewise so interpreted the Act. Interpretative Bulletins Nos. 1 and 4; Foster v. National Biscuit Co., D.C., 31 F.Supp. 552; Bagby v. Cleveland Wrecking Co., D.C., 28 F.Supp. 271; Gates v. Graham Ice Cream Co., D.C., 31 F.Supp. 854; Gerdert v. Certified Poultry & Egg Co., D.C., 38 F.Supp. 964; Fleming v. Goldblatt Bros., D.C., 39 F.Supp. 701; Jewel Tea Co. v. Williams, 10 Cir., 118 F.2d 202; Jax Beer Co. v. Redfern, 5 Cir., 124 F.2d 172, decided December 10, 1941.

In the following Federal Statutes the phrase "engaged in commerce" has been employed by Congress: Federal Trade Commission Act, 15 U.S.C.A. §§ 41–58; Clayton Act, 15 U.S.C.A. §§ 12, 27, as amended by Robinson-Patman Act, 15 U.S.

C.A. §§ 13 (a), (c); United States Cotton Standards Act, 7 U.S.C.A. §§ 51-65; United States Grain Standards Act, 7 U.S.C.A. §§ 71-87; Naval Stores Act, 7 U.S.C.A. § 92(*l*); Importation of Adulterated Seeds Act, as amended, 7 U.S.C.A. §§ 111-116; Interstate Transportation of Petroleum Products, 15 U.S.C.A. § 715a(3); Second Employers' Liability Act, 35 Stat. 65, 45 U.S.C.A. § 51 et seq.; Motor Carrier Act 1935, 49 U.S.C.A. §§ 301-327.

As I read the decisions dealing with these Statutes, the employees plaintiff claims to represent, who are engaged in handling and selling the goods in South Carolina, are and could not under the allegations of the complaint be engaged in interstate commerce, or in the production of goods for interstate commerce, under the Fair Labor Standards Act of 1938. Thus in Lipson v. Socony Vacuum Corporation, 1 Cir., 1937, 87 F.2d 265, 269, the question was the meaning of the terms "engaged in commerce", in Sections 2 and 3 of the Clayton Act, 15 U.S.C.A. §§ 13, 14. Section 1 of that Act, 15 U.S.C.A. § 12, defined "commerce" as it is defined in Section 3(b) of the Fair Labor Standards Act. Like the defendant in this case, the defendants in the Lipson case sold and distributed within one State merchandise shipped in a continuous flow from a central warehouse outside of the State for the purpose of supplying anticipated demands. Upon considering the language of the Statute, the Circuit Court of Appeals for the First Circuit sustained a demurrer to a complaint seeking damages, on the ground that in making the sale and distributing the products the defendants were not "engaged in commerce." The Court said: "We are unable to agree that, as set forth in paragraph 11 of the amended declaration, the plaintiff has alleged with substantial certainty that, owing to what it terms a *continuous flow* of gasoline, all gasoline brought into the northeastern territory by the defendants remains in interstate commerce until it is delivered into the storage tanks of the retailer. While it is clear that the defendants must keep a supply on hand in their storage tanks to meet the fluctuations of demands of the retailers, *an anticipated demand by retailer customers is not sufficient to render shipments a transaction in the course of interstate commerce* until delivered to the customer whenever a demand arises. The cases which hold an order or contract for goods which necessitates a shipment in interstate commerce, and that interstate commerce continues until delivered to the customer, do not apply to anticipated demands. *We do not think the Supreme Court has gone so far as to hold that, to meet the anticipated demands of customers without a specific contract therefor, interstate commerce continues until the demand eventuates in the form of an order or contract and the merchandise is delivered to the retailer."* (Italics added)

In Winslow v. Federal Trade Commission, 4 Cir., 277 F. 206, 209, the Circuit Court of Appeals for this Circuit held that shipchandlers were not engaged in interstate commerce in selling and distributing wholly within the State of Virginia, goods which had come to rest in a warehouse at Newport News, Virginia, after their shipment from outside the State. The Court said: "In carrying on the business thus outlined, were the petitioners engaged in interstate or foreign commerce? This is the fundamental question to be determined, since if they were not, the commission was without jurisdiction. The claim that they were engaged in interstate commerce rests wholly on the fact that the commodities in which they deal are in large part transported into Virginia from other states in which they are procured. *But this transportation ends when the goods reach their destination and are placed in petitioners' warehouses in Norfolk and Newport News.* They are then incorporated in the general stock of merchandise there held for sale, and become subject, so far as now concerns us, to the exclusive jurisdiction of the state of Virginia. *Their subsequent sale and delivery within that state, with which alone the condemned practices are connected, is in no sense interstate commerce."* (Italics added) See, also, Ward Baking Co. v. Federal Trade Commission, 9 Cir., 264 F. 330; Kehrer v. Stewart, 197 U.S. 60, 25 S. Ct. 403, 49 L.Ed. 663; Armour Packing Company v. Lacy, 200 U.S. 226, 26 S.Ct. 232, 50 L.Ed. 451; Howe Machine Co. v. Gage, 100 U.S. 676, 25 L.Ed. 754; Emert v. Missouri, 156 U.S. 296, 15 S.Ct. 367, 39 L.Ed. 430; Wagner v. Covington, 251 U.S. 95, 40 S.Ct. 93, 64 L.Ed. 157; Atlantic Coast Line Railroad Company v. Standard Oil Company, 275 U.S. 257, 48 S.Ct. 107, 72 L.Ed. 270; Atlantic Coast Line Railroad Company v. Standard Oil Company of New Jersey, 4 Cir., 12 F.2d 541, 60 A.L.R. 1456, certiorari denied 273 U.S. 712, 47 S.Ct. 102, 71 L.Ed. 853; Brown v. Houston, 114 U.S. 622, 5 S.Ct. 1091, 29 L.Ed. 257; Pittsburg

& Southern Coal Co. v. Bates, 156 U.S. 577, 15 S.Ct. 415, 39 L.Ed. 538; American Steel & Wire Co. v. Speed, 192 U.S. 500, 24 S.Ct. 365, 48 L.Ed. 538; East Ohio Gas Co. v. Tax Commission, 283 U.S. 465, 51 S.Ct. 499, 75 L.Ed. 1171.

It must be borne in mind that the Fair Labor Standards Act of 1938 applies only to those employees engaged in interstate commerce, or in the production of goods for interstate commerce, and differs in this respect from the following Statutes where the regulatory power of Congress has been extended so as to embrace local activities "affecting commerce". The National Labor Relations Act, 29 U.S.C.A. §§ 151–166; The Agriculture Adjustment Act of 1938, 7 U.S.C.A. § 1301(a) (3, 4); Bituminous Coal Conservation Act of 1937, 15 U.S.C.A. § 834; The Second Employers' Liability Act, as amended in 1939, 45 U.S.C.A. §§ 51–60.

The history of the Second Employers' Liability Act of 1908 demonstrates Congressional recognition of the distinction between acts dealing with activities in interstate commerce and those regulating businesses "affecting" such commerce. This Act was originally applicable to employees who were injured while "engaged in commerce". "Commerce" was defined in that Act as it is in the Fair Labor Standards Act of 1938. In 1939 Congress amended the Second Employers' Liability Act to broaden its scope to include employees whose duties " * * * affect such commerce * * * ", 53 Stat. 1404 (1939), 45 U.S.C.A. § 51. As said by the Senate Committee which reported the amendment: "This amendment is intended to broaden the scope of the Employers' Liability Act so as to include within its provisions employees of common carriers who, while ordinarily engaged in the transportation of interstate commerce, may be, at the time of the injury, temporarily divorced therefrom and engaged in intrastate operations." Senate Report 651—76th Congress, 1st Session.

Decisions under these and similar Statutes are not helpful or controlling except insofar as they distinguish between those Statutes which affect commerce and those dealing with commerce itself.

 In the argument plaintiff's counsel contended that he could and would be able to prove that all the goods shipped by the defendant to its Columbia, South Carolina, plant were not sold and distributed within the borders of the State of South Carolina, but regular weekly shipments of the goods received by the Columbia plant were made to drug stores and hotels in the City of Augusta, Georgia.

Upon this statement of counsel for the plaintiff it is my opinion that he should be allowed to amend the complaint as he may be advised, and that he should be allowed twenty days from the date of this opinion within which to do so.

It follows from the foregoing that defendant's motion as to the plaintiff's cause of action should be denied as to the other employees whom plaintiff claims to represent, the motion should be granted unless plaintiff files amended complaint within twenty days from the date of this opinion.

Appropriate order may be submitted accordingly.