128 F.2d 778 (1942)
WALLING, Adm'r of Wage and Hour Division, U. S. Dept. of Labor,
v.
GOLDBLATT BROS., Inc.
No. 7892.
Circuit Court of Appeals, Seventh Circuit.
June 25, 1942.
*779 *780 Warner W. Gardner and Irving J. Levy, both of Washington, D. C., and Frank J. Delaney, of Chicago, Ill. (Edward Jay Fruchtman, John S. Forsythe, and Jacob D. Hyman, all of Washington, D. C., of counsel), for appellant.
Stanford Clinton and Abram N. Pritzker, both of Chicago, Ill., for appellee.
Charles B. Rugg, of Boston, Mass., for American Retail Federation amicus curiae.
Before SPARKS and KERNER, Circuit Judges, and LINDLEY, District Judge.
LINDLEY, District Judge.
Our question here is whether defendant's employees are within Sections 6 and 7 of the Fair Labor Standards Act of 1938, 52 Stat. 1060, 29 U.S.C.A. § 201 et seq.
Defendant owns and operates three warehouses in Chicago at which it receives merchandise from some forty-five states and from which it thereafter distributes goods to its ten extensive department stores, seven of which are in Chicago, one in Joliet, Illinois, one in Hammond, Indiana, and one in Gary, Indiana. All sell at retail the various articles usually found in a large department store. The warehouses are necessary implements of defendant's business in buying, receiving, storing and distributing goods. Merchandise is received at each daily and thereafter shipped from day to day to the retail stores in both states. A substantial quantity is retained in the warehouses for delivery, after sale at the Illinois stores, directly to purchasers.
Some manufacturing operations are carried on in some of the warehouses. There are processed bakery and food products, meat compounds, blankets, draperies, slipcovers, and other articles. One warehouse also operates a department which manufactures and binds printed forms for use in the stores and warehouses and prepares copy for advertisements.
At each warehouse one group of employees unloads merchandise received by truck and another that received by rail. After goods have been unloaded and checked, they are either moved immediately to the outgoing platform and from there sent to one of the stores or to customers, or placed on an elevator and thence taken to that department where such wares are kept until ordered out to one of the stores. When such an order is received, they are taken to the shipping platform, checked, loaded on defendant's truck and taken to the store ordering them.
Defendant admits noncompliance with Sections 6 and 7 of the Fair Labor Standards Act. The District Court found all employees engaged only in intrastate commerce.
We are concerned with only certain classes of employees; (a), those active in procurement of goods from other states and in their receipt at the warehouses; (b), those who assemble and deliver goods from the warehouses to the stores in Illinois; (c), those whose activities relate to movement of goods from the warehouses to the stores in Indiana; (d), those who produce goods for shipment to the Indiana stores, and (e), those, if any, who are engaged in an occupation necessary to the production of goods shipped to Indiana.
Section 6 of the Act applies to every "employee[s] who is engaged in [interstate] commerce or in the production of goods for [such] commerce * * *." Section 7 provides that, (a), "no employer shall, except as otherwise provided in this section, employ any of his employees who is engaged in commerce or in the production of goods for commerce," longer than a certain period of each week. Section 3(j) provides that "for the purposes of this Act *781 [chapter] an employee shall be deemed to have been engaged in the production of goods if such employee was employed * * * in any process or occupation necessary to the production thereof, in any State."
It is apparent from the many exemptions provided in Sections 7 and 13 that Congress did not intend that the Act should apply to all employees connected in any way with interstate commerce. Reference to the legislative history is enlightening in this respect, but, in view of its adequate exposition by both the Wage and Hour Division and the courts, we shall avoid repetition, except to observe that in the conference committee the words "in commerce" were substituted for "affecting commerce," which had appeared in the successive earlier drafts of the statute during its embryonic stages. Kirschbaum v. Walling, June 1, 1942, 62 S.Ct. 1119, 86 L. Ed. ___, Interpretive Bulletins Nos. 1 and 4; Jax Beer Co. v. Redfern, 5 Cir., 124 F.2d 172; Jewel Tea Co. v. Williams, 10 Cir., 118 F.2d 202; Foster v. National Biscuit Co., D.C., 31 F.Supp. 552; Gerdert v. Certified Poultry & Egg Co., D.C., 38 F.Supp. 964; Eddings v. Southern Dairies, D.C., 42 F.Supp. 664, 667; Fleming v. Arsenal Bldg. Corp., D.C., 38 F.Supp. 207, 211.
To be within the Act, employees must be engaged in commerce or in "any process or occupation necessary to the production" of goods for commerce. That their activities may affect commerce is not sufficient. In this respect comparison of the Act with other commerce statutes is instructive. Many of the latter employ broad phrases or contemplate wide limitations such as "stream of commerce," "current of commerce," "restraining commerce," or "burdening, affecting or obstructing commerce." National Labor Relations Act, Sec. 10(a), 49 Stat. 449, 453, 29 U.S.C.A. § 160(a); Federal Employers' Liability Act, 1939 Amendment, § 1, 53 Stat. 1404, 45 U.S.C.A. § 51; National Bituminous Coal Conservation Act, sec. 4-A, 50 Stat. 83, 15 U.S.C.A. § 834; Packers & Stockyards Act, Sec. 2(b), 42 Stat. 159, 7 U.S.C.A. § 183; Grain Futures Act, sec. 2(b), 42 Stat. 998, 7 U.S.C.A. § 3; Tobacco Inspection Act, sec. 1(i), 49 Stat. 731, 7 U.S. C.A. § 511; Agricultural Marketing Act of 1937, 50 Stat. 246, 7 U.S.C.A. § 608c; and the Agricultural Adjustment Act of 1938, Sec. 301(a) (4), 52 Stat. 38, 7 U.S.C.A., c. 35, § 1301(a) (4). On the other hand, statutes like this are limited to parties "in commerce" or an equivalent. Federal Employers' Liability Act, prior to the 1939 amendment 35 Stat. 65, 45 U.S.C.A. § 51; Federal Trade Commission Act, 38 Stat. 717, 15 U.S.C.A. § 44; U. S. Cotton Standards Act, 42 Stat. 1517, 7 U.S.C.A. § 62(b); U. S. Grain Standards Act, 39 Stat. 482, 7 U.S.C.A. § 72; Naval Stores Act, 42 Stat. 1435, 7 U.S.C.A. § 92(l); Importation of Adulterated Seeds Act, 37 Stat. 506, 44 Stat. 325, 7 U.S.C.A. § 116(f) (2); Interstate Transportation of Petroleum Products Act, 49 Stat. 30, 15 U.S.C.A. § 715a (3); Motor Carrier Act, 49 Stat. 543, 49 U.S.C. A. § 306. Since Congress has evinced explicitly its purpose to protect some interstate commerce activities which, in isolation, are merely local, the limited scope of the Act must be kept in mind. Federal Trade Commission v. Bunte Bros., Inc., 312 U.S. 349, 351, 61 S.Ct. 580, 85 L.Ed. 881. The commerce clause endows Congress with full and plenary power to do anything and everything necessary to protect interstate commerce. United States v. Wrightwood Dairies Co., 315 U.S. 110, at page 119, 62 S.Ct. 523, 86 L.Ed. ___. The specific question is whether in the statute involved the Congress has seen fit to exercise all of its power. In view of the limitations present in the legislation, our question is whether employees are engaged in commerce or in production for commerce or in any process or occupation necessary to such production.
Our first inquiry is whether employees whose activities relate to procurement of goods from other states and those receiving and unloading them at the warehouses are "in commerce." Commerce includes more than transportation; it embraces all component parts of commercial intercourse among states. Foster-Fountain Packing Co. v. Haydel, 278 U.S. 1, 10, 49 S.Ct. 1, 73 L.Ed. 147. Goods purchased in one state for transportation to and delivery in another are included. Currin v. Wallace, 306 U.S. 1, 10, 59 S.Ct. 379, 83 L.Ed. 441; Dahnke-Walker Co. v. Bondurant, 257 U.S. 282, 290, 42 S.Ct. 106, 66 L.Ed. 239; Lemke v. Farmer's Grain Co., 258 U. S. 50, 42 S.Ct. 244, 66 L.Ed. 458; Local 167, Brotherhood of Teamsters v. United States, 291 U.S. 293, 54 S.Ct. 396, 78 L.Ed. 804. Defendant's purchase of goods for importation from across the state line is commerce whether delivery is made to the *782 warehouse or to the stores. Federal Trade Commission v. Pacific Paper Ass'n, 273 U. S. 52, 63, 47 S.Ct. 255, 71 L.Ed. 534; Dozier v. Alabama, 218 U.S. 124, 30 S.Ct. 649, 54 L.Ed. 965, 28 L.R.A.,N.S., 264. It follows that employees engaged in procuring goods from other states are within the Act.
Whether workman unloading out-of-state goods at the warehouses are "in commerce," depends upon when these come to rest and lose their interstate character. They have not reached their destination until actually unloaded and deposited on the warehouse platform. Then and not until then, their interstate journey is at an end. Atlantic Coast Line R. R. v. Standard Oil Co., 275 U.S. 257, 267, 48 S.Ct. 107, 72 L.Ed. 270. Consequently, employees who unload wares at the warehouses are working on goods still in interstate commerce, and are therefore, subject to the Act. Klotz v. Ippolito, D.C., 40 F.Supp. 422, 426; Fleming v. American Stores Co., D.C., 42 F.Supp. 511, 524; Jax Beer Co. v. Redfern, 5 Cir., 124 F.2d 172, 174; Fleming v. Alterman, D.C., 38 F.Supp. 94, 98; Drake v. Hirsch, D.C., 40 F.Supp. 290; Lewis v. Nailling, D.C., 36 F.Supp. 187. See Baltimore & O. S. W. R. R. v. Burtch, 263 U. S. 540, 44 S.Ct. 165, 68 L.Ed. 433; Puget Sound Stevedoring Co. v. State Tax Comm., 302 U.S. 90, 58 S.Ct. 72, 82 L.Ed. 68; Union Stock Yard & Transit Co. v. United States, 308 U.S. 213, 60 S.Ct. 193, 84 L.Ed. 198. So, too, as to all employees engaged in checking such interstate goods prior to the time they have come to rest on the platform. Fleming v. American Stores, D.C., 42 F.Supp. 511, 524; Eddings v. Southern Dairies, D.C., 42 F.Supp. 664, 667.
Plaintiff insists, however, that those who move goods from the platform into the warehouse, those who store them in the proper places, those who take care of them there, those who deliver them to the Illinois stores, and those who do the clerical work involved in such storage and delivery are within the Act. Plaintiff argues that all these activities are merely part of the "stream of commerce" from the place of origin to the retail stores. But we are not dealing with a typical "current of commerce" case. The "current of commerce" test arises in differently phrased statutes involving a wide flow of goods from one state to another through a throat or vent. United States v. Wrightwood Dairies Co., 315 U.S. 110, 62 S.Ct. 523, 86 L.Ed. ___; Stafford v. Wallace, 258 U.S. 495, 42 S.Ct. 397, 66 L.Ed. 735, 23 A.L.R. 229; Swift & Co. v. United States, 196 U.S. 375, 25 S. Ct. 276, 49 L.Ed. 518; Board of Trade of City of Chicago v. Olsen, 262 U.S. 1, 43 S.Ct. 470, 67 L.Ed. 839; Currin v. Wallace, 306 U.S. 1, 59 S.Ct. 379, 83 L.Ed. 441; Krueger v. Acme Fruit Co., 5 Cir., 75 F.2d 67. Here the language is different; the test is whether employees are "in commerce."
In Stafford v. Wallace, supra, great herds of livestock passed from the west into the Chicago stockyards where they were sold by the consignee commission merchants to packers and livestock dealers, and thence shipped to a substantial extent to the eastern states. The stockyards were a "throat," and "economic sluice," through which passed a great flowing current of livestock from west to east. Here, once the goods reached the warehouses, they assumed a wholly local character. The function of the warehouses was to furnish activities and means for the conduct of a relatively local retail business conducted by one company. This function was that of an ordinary warehouse for a retail establishment and bears no resemblance to a "throat" or a "current of commerce." Upon delivery to the warehouse, interstate commerce ceased. Schechter Poultry Corp. v. United States, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570, 97 A.L.R. 947; Gerdert v. Certified Poultry & Egg Co., D.C., 38 F. Supp. 964; Winslow v. Federal Trade Commission, 4 Cir., 277 F. 206, 209, certiorari denied 258 U.S. 618, 42 S.Ct. 271, 66 L.Ed. 793; Atlantic C. L. R. R. v. Standard Oil Co., 275 U.S. 257, 267, 48 S.Ct. 107, 72 L.Ed. 270.
Where orders are solicited within a state and the goods are shipped from without the state directly to the customer or to an agent for delivery to the customer the transactions are a part of interstate commerce until the goods reach the customer. Jewel Tea Co. v. Williams, 10 Cir., 118 F.2d 202, 206, and cases there cited; Binderup v. Pathe Exchange, Inc., 263 U.S. 291, 44 S.Ct. 96, 68 L.Ed. 308; Federal Trade Commission v. Pacific States Paper Trade Ass'n, 273 U.S. 52, 47 S.Ct. 255, 71 L.Ed. 534. But here there were no such prior orders. Defendant knew in advance from its records, in a general way, the needs of the retail stores and acted accordingly. But defendant was not relying on existing orders from its stores or customers. The *783 goods arrived at the warehouses and came to rest. They were not destined for any specific customer or store. The mere fact that an anticipated local transaction causes movement in interstate commerce is not sufficient to constitute the wholly local transaction after arrival a part of commerce. Jewel Tea Co. v. Williams, 10 Cir., 118 F.2d 202, 207, and cases there cited; Lipson v. Socony Vacuum Corp., 5 Cir., 87 F.2d 265, 267. Where goods are delivered to the buyer to be sold later and delivered to intrastate buyers subsequent acts are not commerce. Jax Beer Co. v. Redfern, 5 Cir., 124 F.2d 172, 174; Swift & Co. v. Wilkerson, 5 Cir., 124 F.2d 176; Jewel Tea Co. v. Williams, 10 Cir., 118 F.2d 202; Gerdert v. Certified Poultry & Egg Co., D. C., 38 F.Supp. 964; Veazey Drug Co. v. Fleming, D.C., 42 F.Supp. 689; Klotz v. Ippolito, D.C., 40 F.Supp. 422; Foster v. National Biscuit Co., 31 F.Supp. 552; Lipson v. Socony Vacuum, 1 Cir., 87 F.2d 265; Atlantic Coastline R. R. v. Standard Oil, 275 U.S. 257, 48 S.Ct. 107, 72 L.Ed. 270; Winslow v. Federal Trade Commission, 4 Cir., 277 F. 206; Fleming v. Arsenal Bldg. Corp., D.C., 38 F.Supp. 207; Rauhoff v. Henry Gramling & Co., D.C., 42 F.Supp. 754.
Plaintiff relies upon two cases to the contrary. In Gavril v. Kraft Cheese Co., D.C.N.D.Ill., 42 F.Supp. 702, 705, the court found the facts such as to bring the cause within an opinion of the Federal Trade Commission holding that the warehouse was only a throat in a "continuous, uninterrupted flow and current of commerce" from wholesaler to retailer. In Fleming v. Alterman, D.C.N.D.Ga., 38 F. Supp. 94, the court discussed the problem at length and concluded that there was "a flow of commerce" to the retailer. Plaintiff also directs our attention to Binderup v. Pathe Exchange, Inc., 263 U. S. 291, 44 S.Ct. 96, 68 L.Ed. 308; Federal Trade Commission v. Pacific States Paper Trade Ass'n, 273 U.S. 52, 47 S.Ct. 255, 71 L.Ed. 534, and United States v. General Motors, 7 Cir., 121 F.2d 376. In the Binderup case, there were contracts for leasing by, and delivery of film made in New York to exhibitors, in Iowa, Nebraska, South Dakota and Minnesota, the films being sent to an agent of the distributors in Nebraska to be held by him until sent to the exhibitors in the other states. This was strictly interstate commerce until the films reached the exhibitor. In the Pacific case, the goods were shipped directly by manufacturers to retailers or to a wholesaler for the retailers. Here again there was a prior order and an intent that the journey of the goods should not really end until they reached their contemplated destination, the retailers. The General Motors case had to do with "restraint of commerce." We held merely that what occurred prior to delivery to the consumer was properly considered in determining whether there had been, "restraint of commerce," not that employees of the dealer were in commerce.
Since upon delivery of the goods at defendant's warehouse, interstate movement has ceased, employees concerned solely with subsequent moving and storing of the goods in the warehouses are not in commerce. Equally clearly, employees shipping goods from the warehouses to the Illinois stores are not within the Act.
A different problem faces us, however, as to employees who manufacture goods in the warehouses for shipment to Indiana and those who actually ship goods to that state. Apparently the Act contemplates in some measure that purely local retail employers on or near a state line should not be included. Report of the Senate Labor Committee. Sen.Rep. No. 884, 75th Cong. 1st Sess. This limitation was aimed, apparently, at small local establishments which lie near a state line and those in a city lying within two states. Collins v. Kidd, D.C., 38 F.Supp. 634. We do not believe that Congress intended to except a business such as defendant conducted. Defendant does not merely have a store in Chicago which happens to serve a few persons just over the line in Indiana. It has two stores in Indiana which serve only Indiana trade in very substantial amounts of goods brought from Illinois. This is no more local than if the outlets had been in Iowa, Wisconsin or Michigan. True, the Indiana stores are within some fifty miles of Chicago, but their activities would be in no wise different if they were many times that distance away.
Further we think that such elimination of applicability was intended to include only ordinary retail stores, Fair Labor Standards Act of 1938, § 13(a) (2), 29 U.S.C.A. § 213(a) (2), and not a great establishment shipping goods out of the state to two of its important outlets. Fleming v. American Stores Co., D.C., 42 F.Supp. 511. See Great Atlantic & Pacific Tea Co. v. Morrissett, D.C., 58 F.2d 991, *784 affirmed 284 U.S. 584, 52 S.Ct. 127, 76 L.Ed. 506. Section 3(b) of the Act expressly defines commerce as transportation "among the several States or from any State to any place outside thereof." Persons engaged in shipping goods to the Indiana stores are engaged in interstate commerce. Wagner v. City of Covington, 251 U.S. 95, 104, 40 S.Ct. 93, 64 L.Ed. 157, 168; Kirmeyer v. Kansas, 236 U.S. 568, 35 S.Ct. 419, 59 L. Ed. 721; Sprout v. South Bend, 277 U.S. 163, 48 S.Ct. 502, 72 L.Ed. 833, 62 A.L.R. 45. To hold otherwise would defeat the expressed purpose of the Act to prevent making interstate commerce an instrument of competition in distribution of goods produced under substandard labor conditions. United States v. Darby, 312 U.S. 100, 115, 657, 61 S.Ct. 451, 85 L.Ed. 609, 132 A.L.R. 1430.
Employees engaged in processing goods to be shipped to Indiana are within the literal wording of the Act, viz: "engaged * * * in the production of goods for commerce." Goods made up to be sent to Indiana are goods produced for commerce. Since the evidence indicates that all such employees manufacture goods without distinction as to whether they are to be sent to Indiana or to Illinois, all such manufacturing employees are within the Act.
Certain employees are engaged in caring for, maintaining and operating the warehouses where production for commerce occurs. These activities bring them directly within that provision of the act which provides for coverage of persons engaged in any process or occupation necessary to the production of goods for commerce. In Kirschbaum v. Walling, June 1, 1942, 62 S.Ct. 1116, 86 L.Ed. ___, the court, after reviewing the history of the legislation, concluded that there could remain no doubt that though Congress had chosen not to enter areas which it might have occupied and though the Act is not coextensive with the limits of congressional power over commerce, the parties who furnished light, heat and power and similar service in the buildings where production for commerce occurred were within the Act. The work of such employees had such a close and immediate tie with the process of production for commerce and was so much of an essential part of it that the workmen were to be regarded as engaged in an occupation necessary to the production of goods for commerce. The court pointed out that no strict formula could be fixed. But it seems to us that the facts here are such that employees engaged in the operation, maintenance and preservation of the warehouses where production for commerce occurs, are likewise engaged in an occupation necessary to the production of goods for commerce.
We conclude that those employees who order and procure, those who unload goods from without the state, at defendant's warehouses, those who check them before they are deposited on the unloading platform, those who manufacture goods at the warehouses, those engaged in maintaining, operating, caring for and servicing warehouses where production for commerce occurs, and those who pack and ship goods to Indiana from the warehouses are within the Act. Those employees, however, who are concerned solely with storage in the warehouses and in delivery of goods to the Illinois stores and those printing and preparing record books, memoranda, and advertising copy are not subject to the Act.
We do not agree with the District Court that none of the employees is engaged in commerce or in the production of goods for commerce or with the Administrator that all employees of all warehouses are within the Act. The duties of each must be looked to, wherever he may work, to ascertain whether a substantial part of his labor is in commerce, in production of goods for commerce or in an occupation necessary to production of such goods. We do not attempt to frame a final judgment, inasmuch as the order appealed from was entered without complete hearing. Furthermore, as only the Administrator's evidence was heard, what we have said shall not prejudice in any manner defendant's right to prove any of the statutory exemptions. We, therefore, reverse the judgment in part; affirm it in part, and remand the cause for such findings as ought to be made and such judgment as should be entered after the evidence has been heard, in accord with the announcements of this opinion.
The judgment will be affirmed in part and in part reversed for further proceedings in accord with the announcements herein contained.