WALLING, Administrator of Wage and Hour Division, United States Department of Labor, v. SILVER BROS. CO., Inc.

No. 3826.

Circuit Court of Appeals, First Circuit.

May 21, 1943.

Rehearing Denied June 18, 1943.

Bessie Margolin, of Washington, D. C. (Irving J. Levy, of Washington, D. C., Vernon C. Stoneman, of Boston, Mass., and Faye Blackburn, Atty., U. S. Dept. of Labor, of Washington, D. C., on the brief), for appellant.

Robert P. Bingham, of Manchester, N. H. (Kenneth F. Graf and McLane, Davis

& Carleton, all of Manchester, N. H., on the brief), for appellee.

Before MAHONEY and WOODBURY, Circuit Judges, and SWEENEY, District Judge.

MAHONEY, Circuit Judge.

This action was brought by the Administrator of the Wage and Hour Division, United States Department of Labor, to enjoin Silver Bros. Co., Inc., from violating the provisions of Sections 15(a) (2) and 15(a) (5) of the Fair Labor Standards Act of 1938, 52 Stat. 1060, Ch. 676, 29 U.S.C.A. § 201 et seq., hereinafter called the Act. The district court dismissed the bill and the Administrator has taken this appeal.

The appellee is a large wholesale grocer in the State of New Hampshire and in the course of its business buys most of its goods, namely, beer, fruit, groceries, produce and vegetables, from dealers outside of the state. These are brought in by rail, out of state trucks, and its own trucks. It employs eighty-six persons, operates twenty-two trucks and has gross sales of approximately $1,600,000. About $900,000 of this amount is from the sale of beer, and $700,000 from the sale of groceries. It has large warehouse facilities, loading and unloading platforms and a private railroad siding. The greater part of its goods is distributed in the State of New Hampshire, although there are out of state customers whose purchases amount to $32,000 to $50,000 annually, which constitute 2 to 3 per cent of its gross business. 75 to 80 per cent of its customers are regular and repeating, such as stores, restaurants, institutions, schools and colleges. The eighty-six persons employed by appellee in its business include office help, salesmen, watchmen, truck drivers, mechanics, helpers and warehousemen. The truck drivers are divided into three groups: (1) those who are engaged in transporting beer, fruit and other goods from out of the state to appellee's warehouse; (2) those who oc-casionally cross state lines to deliver goods in Maine and Massachusetts; and (3) those who drive exclusively within the state. The drivers who deliver beer in New Hampshire also pick up empty beer containers which are thereafter shipped to out of state breweries. The employees were paid a stated weekly salary with no provision made for overtime. The office help ordinarily worked forty-eight hours a week; watchmen worked an average of eighty-four hours and the drivers, shippers, loaders and helpers worked an average of fifty-five to sixty hours a week.

The district court made findings of fact and conclusions of law which may be briefly summarized as follows: Truck drivers, helpers and mechanics, engaged in the transportation of beer and other commodities from out of state to appellee's warehouse and those engaged in delivering goods to points outside the state were engaged in interstate commerce but were not covered by the Act because they fell within the exemption provision of § 13(b) (1)[1] which brought these employees under § 204(a) (3)[2] of the Motor Carrier Act, 49 Stat. 543, 49 U.S.C.A. § 301 et seq. (1935). Appellee's truck drivers and helpers engaged in delivering goods from its warehouse to points within the State of New Hampshire, employees who handled goods in appellee's warehouse after they had been received therein, and persons employed in the clerical department, were all held to be in intrastate commerce and were not within the provisions of the Act.

We start out with the proposition that the Act covers employees who are engaged in interstate commerce, Kirschbaum Co. v. Walling, 316 U.S. 517, 524, 62 S.Ct. 1116, 86 L.Ed. 1638, and that unless a substantial portion of an employee's activities is in interstate commerce we must conclude that he does not come within the protection of the Act, Walling v. Jacksonville Paper Co., 317 U.S. 564, 63

[1] "(b) The provisions of section 7 shall not apply with respect to (1) any employee with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service pursuant to the provisions of section 204 of the Motor Carrier Act, 1935."

[2] "(3) To establish for private carriers of property by motor vehicle, if need therefor is found, reasonable re-quirements to promote safety of operation, and to that end prescribe qualifications and maximum hours of service of employees, and standards of equipment. In the event such requirements are established, the term 'motor carrier' shall be construed to include private carriers of property by motor vehicle in the administration of sections 204(d) and (e); 205; 220; 221; 222 (a), (b), (f), and (g); and 224."

S.Ct. 332, 87 L.Ed. ——. The district court placed the employees in broad categories and while the record shows that this classification is not entirely consistent with the facts in that many of these employees were engaged in various activities, nevertheless, the classification is useful in that it represents the activities in which these employees were engaged during the greater portion of their time.

Many of the complicated problems have been resolved for us by two recent Supreme Court decisions, Southland Gasoline Co. v. Bayley, 63 S.Ct. 917, 918, 87 L.Ed. ——, decided May 3, 1943, and Walling v. Jacksonville Paper Co., supra.

■ In the Bayley case the Supreme Court determined that § 213(b) (1) of the Act withdraws employees from the scope of the authority of the Wage and Hour Administrator "with respect to whom the Interstate Commerce Commission has the power to establish classifications and maximum hours of service pursuant to the provisions of section 204 of the Motor Carrier Act, 1935" and that the Interstate Commerce Commission has this authority whether or not the Commission finds a need to regulate. Stated differently, the Bayley case holds that Congress withdrew from the coverage of the Act employees of private carriers, that is, drivers, helpers, mechanics and loaders, regardless of whether the Interstate Commerce Commission regulates their activities. It follows from that decision that all of appellee's drivers, helpers, mechanics and loaders who were engaged in activities in interstate commerce were not within the Act.

■ In Walling v. Jacksonville Paper Co., supra, a suit was brought to enjoin the Jacksonville Paper Company, a wholesale business distributing paper and related articles, for violating certain provisions of the Act. The issue in that case was to a considerable extent like the one which confronts us, namely, whether employees at the warehouses of the paper company which constantly received shipments of goods from out of state and distributed them locally, were within the provisions of the Act. In that case, as here, some of the goods were shipped directly from out of the state to the paper company's customers and some were purchased on special orders. The court held that these sales were in interstate commerce and, of course, an employee who was engaged in the handling of these goods was employed in interstate commerce. There, as here, the great bulk of sales of goods passed through the warehouses and the goods were subsequently sold to local customers. The court held that the interstate character of the merchandise which came to rest in the paper company's warehouses was terminated and that subsequent transactions were in intrastate despite the fact that the customers of the paper company constituted a fairly stable group and their orders were recurrent as to kind and amount of merchandise. The court rejected the contention that the wholesaler's warehouses were merely places of temporary pause in the transit of goods in interstate commerce. It made it clear that Congress did not legislate to the full extent of its power and that it plainly indicated its purpose to leave local business to the protection of the states. As it said (pages 570, 571 of 317 U.S., page 336 of 63 S.Ct., 87 L.Ed. ——):

"We may assume the validity of the argument that since wholesalers doing a local business are in competition with wholesalers doing an interstate business, the latter would be prejudiced if their competitors were not required to comply with the same labor standards. That consideration, however, would be pertinent only if the Act extended to businesses or transactions 'affecting commerce'. But as we noted in the Kirschbaum case, the Act did not go so far."

There is evidence before us which indicates that appellee was in a position to make its purchases in anticipation of the demands of its customers and that certain of its commodities had a rapid turnover, particularly beer. We have examined the record and the briefs in the Jacksonville case and it is clear that this same type of evidence was before that court. Many articles handled by the paper company had a rapid turnover and the managers of the company's branch warehouses could gauge with considerable precision the prospective demands of its customers. Orders were made accordingly. In holding that the employees working at the warehouses handling goods to be delivered in intrastate commerce were not covered by the Act, the court said (page 570 of 317 U.S., page 336 of 63 S.Ct., 87 L.Ed. ——):

"We do not mean to imply that a wholesaler's course of business based on anticipation of needs of specific customers, rather than on prior orders or contracts, might not

at times be sufficient to establish that practical continuity in transit necessary to keep a movement of goods 'in commerce' within the meaning of the Act. * * * We do not believe, however, that on this phase of the case such a course of business is revealed by this record. The evidence said to support it is of a wholly general character and lacks that particularity necessary to show that the goods in question were different from goods acquired and held by a local merchant for local disposition."

We are of the opinion that the evidence before us is not of "that particularity" sufficient to bring these employees within the scope of the Act. As a matter of fact, the arguments of appellant in its brief and in its oral argument on this phase of the case were based on the presupposition that the cases were alike. Two cases, Walling v. Goldblatt Bros., 7 Cir., 1942, 128 F.2d 778, and Walling v. American Stores, 3 Cir., 133 F.2d 840 decided Feb. 11, 1943, in which the facts bear a resemblance to those in the instant case, are, nevertheless, distinguishable. In Walling v. Goldblatt Bros., supra, decided before the Jacksonville case, an action was brought to restrain the owner of three warehouses in Chicago, Illinois, for violations of the Act. Merchandise was received at these warehouses from outside the state and, thereafter, was distributed to defendant's ten large department stores. Some of these department stores were outside of Illinois. As to those employees who distributed and delivered goods from the warehouses to the stores in Illinois the court held that they were engaged in intrastate commerce and were, therefore, not covered by the Act. It was of the opinion that the fact that the defendant could in a general way anticipate the needs of its stores was not sufficient to make the warehouse a temporary stopping place for the goods in their transit in commerce. Walling v. American Stores, supra, decided after the Jacksonville case, involved the issuance of an injunction to restrain for alleged violations of the Act. Defendant in that case had its central warehouse in Philadelphia. It operated warehouses in different states. It also operated retail stores which were supplied from these warehouses. Defendant's warehouses made deliveries only to stores in the states in which they were located. The court concluded that those employees who handled goods sent from defendant's warehouses to its retail stores were in interstate commerce. It recognized that as to this group of employees it was in conflict with the Goldblatt case, supra. It justified its conclusion on the ground that its decision came after the Jacksonville case and that on the basis of certain language contained therein it was required to hold these employees to be engaged in interstate commerce. The court found that the defendant sought to avoid overstocking; that goods in its warehouse had a fairly rapid turnover; that purchases were made in anticipation of the requirements of the retail stores; that defendant was a highly integrated unit and that the case did not involve an independent wholesaler but that the warehouses supplied the goods to the retail stores and to no others. In that case purchases were made with the assurance that the retail stores would take them and thus there was more than anticipation of customers' needs based upon past experience. It may be that where the warehouse and the retail stores are part of an integrated unit the evidence is of "that particularity" necessary to show that the goods do not come to rest in the warehouse in the sense that the flow of goods in commerce has been terminated, and that those engaged in the handling of the goods are, therefore, covered by the Act. While the language in the Jacksonville case may compel such a conclusion, we do not believe that the facts before us are sufficient to bring these employees within the Act. It, therefore, follows that those employees who handle goods in the warehouse and prepare them for local shipments are not within the purview of the Act.

Appellant contends that truck drivers and helpers who picked up empty beer containers and returned them to the warehouse, thereafter to be shipped back to the breweries, located outside the state, and those employees who loaded the empty containers upon interstate trucks, were engaged in interstate commerce and fell within the Act. The district court by its finding that these employees were not in interstate commerce must have concluded that this activity was not a substantial portion of their employment. If we assume, however, that this activity consumed a substantial portion of their time we would be constrained under the authority of the Bayley case to hold that these employees, while engaged in interstate commerce, did not come under the authority of the Wage and Hour Administrator.

We come now to the last group of employees with whom we are concerned and that is the clerical workers. It is apparent from the conclusion of the district judge that he was of the opinion that the greater portion of their time was devoted to the clerical work involved in the storage of goods in the warehouse and delivery of those goods within the state, and that they did not devote a substantial portion of their time to clerical work involved in interstate shipments. See Walling v. Goldblatt Bros., supra, page 784 of 128 F.2d. The evidence as to these employees is most general in character and we are, therefore, in no position to upset the district court's finding in this matter.

The judgment of the District Court is affirmed.

### On Petition for Rehearing.

We handed down an opinion in Walling v. Silver Bros. Co., Inc., on May 21, 1943, affirming the District Court for the District of New Hampshire. The Administrator has petitioned us for a rehearing on two points discussed in that opinion. We determined on the authority of Southland Gasoline Co. v. Bayley, 63 S.Ct. 917, 87 L.Ed. ——, decided by the Supreme Court of the United States May 3, 1943, that Section 13 (b) (1) of the Act, 29 U.S.C.A. § 213(b) (1), withdraws employees from the scope of the authority of the Wage and Hour Administrator "with respect to whom the Interstate Commerce Commission has power to establish *qualifications and maximum hours of service pursuant to the provisions of Section 204 of the Motor Carrier Act of 1935*". (Italics ours.) In footnotes we set out Section 13(b) (1) of the Fair Labor Standards Act and Section 204(a) (3) of the Motor Carrier Act, 49 U.S.C.A. § 304 (a) (3). The Administrator suggests, however, that certain language in the opinion such as "* * * all of appellee's drivers, helpers, mechanics and loaders who were engaged in activities in interstate commerce were not within the Act" is susceptible of the interpretation that these employees were withdrawn from the scope of the Fair Labor Standards Act with respect to the minimum wage provisions. The administrator in his statement of points relied on upon appeal raised the question of the coverage of these employees only as to the overtime provisions of the Fair Labor Standards Act and our opinion dealt with this question. We followed closely the Bayley case and did not intend to go beyond the scope of that opinion.

The Administrator's second contention is that there is no basis for our conclusion that the district court was of the opinion that no substantial portion of the time of the clerical workers was spent in interstate commerce. We affirmed the lower court merely because, as we said, "the evidence as to these employees is most general in character and we are, therefore, in no position to upset the district court's finding in this matter".

We think that what we have said clarifies our original opinion and disposes of the Administrator's petition for rehearing and, therefore, the petition is denied.