## WALLING, Adm'r of Wage and Hour Division, U. S. Dept. of Labor, v. A. H. PHILLIPS, Inc.

Civ. No. 1811.

District Court, D. Massachusetts.
June 22, 1943.

Warner W. Gardner, Sol., and Irving J. Levy, Associate Sol., both of Washington, D. C., and Vernon C. Stoneman, and Charles H. McCue, Associate Atty., both of Boston, Mass., for petitioner.

Joseph B. Ely, and Edward T. Collins, all of Springfield, Mass., for defendant.

FORD, District Judge.

This is an action brought under Section 17 of the Fair Labor Standards Act of 1938, c. 676, 52 Stat. 1060, 29 U.S.C.A. § 201 et seq. (hereinafter called the Act), to enjoin violations of Sections 15(a)(1), 15(a)(2), and 15(a)(5) of the Act.

The facts have been stipulated and are adopted by me as my findings of fact. They are:

### Business

The defendant is a Massachusetts corporation with its principal and sole office at Springfield, Massachusetts. In pursuance of its business of selling food and other grocery items at retail from its various stores it purchases such commodities in the course of its business and distributes the same from its central warehouse at Springfield, Massachusetts, to its several stores in Massachusetts and Connecticut. It operates a chain of approximately forty-nine retail stores of which about forty are in Massachusetts and about nine in Connecticut. It has its warehouse and office at 21 Napier Street, Springfield, Massachusetts.

It does an annual business of approximately $1,500,000. The merchandise handled consists of most of the nationally known brands of canned fruits and vegetables, soap, flour and other staples, cigarettes and fresh fruits and vegetables, bread and milk, etc. It also handles some canned products packed and sold to it under its own private labels. About 18% of its dollar volume is sold through its Connecticut stores from merchandise shipped from the central warehouse in Springfield.

The business is very competitive and wages are the largest item of cost outside the cost of merchandise.

## The Warehouse

The physical facilities of the warehouse consist of a two-story building and other connected one-story buildings and a garage which houses the defendant's nine cars. The aggregate floor space of the warehouse buildings is approximately two hundred fifty thousand square feet. The warehouse is served by a direct railroad siding with a freight-receiving platform which accommodates eight freight cars. Approximately two-thirds of the merchandise handled by the defendant is delivered to it directly at this siding in carload lots.

The warehouse has a usual inventory of $175,000 to $200,000 which is approximately 15% of the amount of goods handled by the defendant each year. A record of the warehouse inventory is maintained by means of a card index, the so-called Power's System, each card representing a certain number of units of a particular commodity. As shipments are made of the commodity, an appropriate number of cards is withdrawn from the file, so that an examination of the cards remaining in the file will indicate the size of the warehouse's stock of the commodity in question. When it thus appears that the warehouse inventory of a particular item is low in relation to the prospective demand from the stores, additional merchandise is ordered. Occasionally purchases are made in advantageous markets without regard to the Power's System. There is a considerable amount of regularity in the demand from the retail stores for the particular commodities, and the requirements to meet this demand from week to week can be anticipated.

The warehouse sometimes receives requisitions from commodities of which the warehouse has exhausted its supply. In such cases, the requisition is kept on file and is filled with the first regular shipment after the warehouse supply has been replenished.

About 80% of the merchandise handled in the warehouse is received from outside the state of Massachusetts. For example, potatoes are imported from Maine, oranges from Florida, flour from Buffalo, New York, and other points outside Massachusetts, cigarettes from the Carolinas, peas from Walla Walla, Washington, butter from Iowa. At least two-thirds of this merchandise arrives by rail and most of the balance by common carrier truck. Small rail shipments are not delivered to the defendant's siding, but are picked up at the railroad station by the defendant's trucks. These trips, which are made about three times per week, are ordinarily made by the same driver, but if the other drivers are not busy, they are also used for this purpose. Most of the merchandise received at the warehouse arrives in carload lots, and is unloaded from the cars onto the freight-receiving platform by the defendant's warehouse employees, sometimes assisted by the truck drivers. This merchandise is then taken by the defendant's warehouse employees into the warehouse, where some of it is sent to the broken lot department on the second floor of one of the warehouse buildings to be broken up into small units, and the balance is stored in the warehouse in the original unbroken containers.

## The Stores

Each store is physically separate from the warehouse and office, and from each other store. The forty-nine stores are located in approximately sixteen cities and towns in the states of Massachusetts and Connecticut. When more than one store is situated in a particular city or town, they generally are so located as to serve distinct competitive areas, and not to supplement each other's service to the same section of the consuming public. All the retail stores are located within a thirty-five mile radius of Springfield.

The defendant maintains separate accounts for each store. It keeps a record of the inventory of each store and of transfers of goods from one store to another, and a record of the cash deposits of each store. Merchandise is supplied to each store on the basis of requisitions prepared by the individual store manager, subject to revision by one of the three superintend-

ents, each of whom supervises a group of stores.

## Distribution

The merchandise delivered at the warehouse is in turn distributed by the defendant to its retail stores by means of its fleet of six to nine trucks. The shipments for the stores are prepared by the defendant's warehouse employees and are loaded by them, with the assistance of the drivers, onto the defendant's trucks for delivery to the stores. The defendant's truck drivers are used interchangeably in making such deliveries within and without the state of Massachusetts. All merchandise delivered to the retail stores passes through the warehouse first, except bread, pastry and milk. Consequently, even the merchandise procured within Massachusetts by the warehouse is included in the shipments from the warehouse to the out-of-state stores, and it is known by the defendant, at the time such merchandise is ordered and received by the defendant from its sources within the state of Massachusetts, that the merchandise is destined, in part, for the retail stores in Connecticut.

A regular order is delivered once each week to each store, and additional short deliveries, including fresh fruit and vegetables, are delivered as needed. Deliveries go to Connecticut more often than once a week, since the Connecticut stores, like the Massachusetts stores, get their weekly orders on different days. Deliveries are based upon requisitions sent in by the individual store managers. Invoices are made out for each shipment of goods from the warehouse to each store, and separate accounts and inventories are maintained for each retail store.

Bread, pastry and milk are received by the individual stores on "direct deliveries" from local sources. The prices and terms of sale of these articles are negotiated by the office, but direct deliveries of merchandise are made upon requisition of the store manager. The office in Springfield receives the invoices for all these direct deliveries, including those made to the Connecticut stores from Connecticut sources, and the Springfield office makes payment for such deliveries.

## Merchandise Turnover

The business is very competitive and in the interest of economy and profitable operation, rapid turnover of the warehouse inventory is an objective, to avoid loss through spoilage, deterioration and depreciation, and the tying up of too much capital in inventory. The defendant handles about eleven hundred items, and although the broken lot department of the warehouse handles about one thousand items, ninety per cent of the merchandise is shipped out in the original unbroken packages. The average turnover of the warehouse stock is about twelve times annually, but some individual items are turned over more frequently. For example, fresh citrus fruits and certain fresh produce are turned over weekly; cigarettes weekly; some brands of coffee weekly; potatoes weekly. Other items are turned over more slowly—soap about every sixty days; coal about once a month; some brands of coffee three to six times a year.

## Duties of Warehouse and Office Employees

The functions of the office employees are, among other duties, to check invoices, pay bills, check direct deliveries, keep records of the warehouse inventory, maintain the retail store inventories, keep a record of the retail stores' cash, check store credits, and make out payrolls for office, warehouse and store employees. There is no segregation of the time spent by these employees in performing these services as between the activities relating to goods which cross state lines on their way to or from the defendant's warehouse. The employees who work on payrolls, handle payrolls for all employees at the warehouse, office and the retail stores.

The superintendents work from the office and supervise the stores, and their duties include the revision of the store manager's requisitions on the warehouse, the collection of each store's daily cash receipts, the deposit of these receipts in the defendant's bank account, etc. Two of the superintendents supervise the stores in Massachusetts, the other supervises the Connecticut stores and some Massachusetts stores.

The receiving clerk keeps a record of the incoming shipments to the warehouse and supervises the unloading of these shipments. There is no segregation of his time as between shipments arriving from within the state of Massachusetts and those arriving from other states.

The employees in the billing department check orders from the stores and make out invoices covering shipments to the stores.

There is no segregation of their time as between orders for and shipments to stores in Massachusetts and stores in Connecticut.

The shipping clerk has charge of shipments from the warehouse to the stores and supervises the bagging of coal and the preparation of orders for the stores. There is no segregation of his time as between shipments to stores in Massachusetts and stores in Connecticut.

The warehouse men and warehouse helpers unload incoming shipments into the receiving platform, carry the merchandise, in the original containers, in the warehouse, and make up outgoing shipments which consist chiefly of original containers. The warehouse employees in the broken lot room divide cases of merchandise into smaller units for subsequent shipment to the stores in both states. There is no segregation of the time spent by these employees as between receipts from and shipments to points within and without the state of Massachusetts.

The drivers help load the trucks and occasionally help to unload incoming shipments, in addition to their regular driving duties. The drivers are used interchangeably on trips to the stores in Connecticut.

The greater part of the time of the aforementioned employees is devoted each week to work relating to goods which are to be sold through the Massachusettts stores.

## Wages, Hours and Records

Prior to October, 1941, the defendant did not maintain the records specified in Part 516 of the Regulations for any of the aforementioned employees.

Prior to April, 1941, the defendant did not pay its drivers on the basis of time and a half for hours worked in excess of the maximum prescribed by the Act.

The payroll records as to drivers are incorrect in that they do not show the hours worked by the drivers in excess of fifty hours each week since it was the defendant's policy to disregard hours worked in excess of fifty.

Prior to December, 1941, the defendant did not pay its employees in the warehouse on the basis of time and a half for hours worked each week in excess of the maximum prescribed by the Act and did not maintain the records specified in Part 516 of the Regulations, as to employees in the warehouse.

The defendant did not pay the office employees overtime compensation at time and a half for hours worked in excess of the maximum prescribed by the Act and did not maintain the records required in Part 516 of the Regulations as to the office employees.

The defendant sets up in its answer the following defenses:

(1) That the Act does not apply to it or to its employees in the central office or warehouse (it is not contended by the Administrator that the employees of the retail stores are within the coverage of the Act) because they are not engaged in commerce or in the production of goods for commerce.

(2) That it is a retail establishment within the meaning of Section 13(a) (2) of the Act and hence all its employees are exempt.

(3) That the truck drivers are exempt from the provisions of Section 7 (maximum hours) of the Act under the provisions of Section 13(b) (1).

█ It is settled in view of the decisions in Southland Gasoline Co. v. Bayley (Richardson v. James Gibbons Co.), 63 S.Ct. 917, 87 L.Ed. ——, United States Supreme Court, dated May 3, 1943, and Walling v. Silver Bros. Co., Inc., 1 Cir., 136 F.2d 168 dated May 21, 1943 that the truck drivers referred to in the stipulation are exempt from the provisions of Section 7 of the Act under Section 13(b) (1). They were engaged in transporting goods in interstate commerce as will be seen later.

The question remaining is whether the central office and warehouse employees are entitled to the benefits of the Act.

█ It would serve no good purpose to discuss in detail the principles of law applicable to the present case inasmuch as the defenses of the defendant here are disposed of quite adequately by the case of Walling v. American Stores Co., 3 Cir., 133 F.2d 840. That is a case whose facts are sufficiently similar to those of the present case to justify this court in deciding it is decisive of the contentions made by the defendant, (1) that the defendant was a retail establishment, the greater part of whose selling is in intra-state commerce and hence exempt under the provisions of Section 13(a) (2) of the Act and (2) that the employees of the central office and warehouse were not engaged in interstate

commerce. To be sure, the American Stores Company, as the defendant argues, was a much larger organization than the defendant but the character of the defendant's business and of the employees' work was similar. And, as was said in the case of Kirschbaum Co. v. Walling, 316 U.S. 517, 524, 62 S.Ct. 1116, 1120, 86 L.Ed. 1638: " * * * the provisions of the Act expressly make its application dependent upon the character of the employees' activities".

With respect to the contention that the defendant was not a retail establishment, it seems plain from the legislative history that is so clearly set out in the American Stores case, that the defendant's warehouse and central office establishments could not be said to be a retail establishment "comparable to the intrastate 'local' or 'corner grocery man', 'druggist', 'meat dealer', 'filling-station man' or even 'department store' about whom the legislators were concerned". (page 844 of 133 F.2d). Cf. Walling v. Jacksonville Paper Co., 317 U.S. 564, 571, 63 S.Ct. 332, 337, 87 L.Ed. ——, where the Supreme Court stated: "It is quite clear that the exemption in § 13(a) (2) was added to eliminate those retailers located near the state lines in making some interstate sales", such as the corner grocery man, etc.

As to the defense that the employees of the central office and warehouse were not engaged in interstate commerce, an answer may be easily found with respect to the facts here in the Jacksonville Paper Company and American Stores cases, supra. As stated above, the business in this case and the American Stores case was similar; the warehouses in the American Stores case delivered only to the retail stores in the state in which the warehouse was situated. We have not in the present case, nor did the court have in the American Stores case (see page 846 of 133 F.2d), a situation comparable to " 'goods acquired and held by a local merchant for local disposition,' * * * but rather a situation where goods are shipped from one state and briefly warehoused in another for the convenience of the owner

in making an efficient distribution of those goods to its local retail outlets". Consequently here, as in that case, there are present the following facts: That the defendant's warehouse supplied merchandise to its own retail stores and no others; that the goods in the warehouse had a fairly rapid turnover; that purchases were made in anticipation of the requirements of the retail stores; and there was a continuity of movement of goods until they reached the retail stores in Massachusetts —and up to that point in interstate commerce. It will be noted that the present case is a stronger one than the American Stores case for the conclusion finally reached that the employees in the central office and warehouse are in interstate commerce because in the present case the defendant shipped eighteen per cent of its goods to the state of Connecticut with no segregation of duties on the part of the employees involved with respect to the merchandise shipped to its stores in Massachusetts and in Connecticut. Cf. Fleming v. Jacksonville Paper Company, 5 Cir., 128 F.2d 395, 398, where it is stated: "Those who work either at selling or delivering across State lines, or at buying and receiving across State lines, are employed in commerce, whether they write the letters, keep the books, or load and unload or drive the trucks".

The case of Walling v. Silver Bros. Co., Inc., supra, decided since the present case was argued, does not disagree with the conclusion in the American Stores case on the facts presented there. To be sure, the court distinguished the latter case from the Silver Bros. case but it indicated that if the facts in the Silver Bros. case were similar to those in the American Stores case (as they are in the present case) it would have followed the American Stores case.

I conclude that the employees of the central office and warehouse of the defendant are subject to the provisions of the Act. In the light of the conclusions reached, the violations of the Act being admitted, a decree will be entered for the plaintiff in accordance with this opinion.