**WALLING, Administrator of Wage and Hour Division, United States Department of Labor, v. BLOCK.**

**No. 10281.**

Circuit Court of Appeals, Ninth Circuit.

Nov. 19, 1943.

Irving J. Levy, Acting Sol., and Bessie Margolin, Asst. Sol., Wage and Hour Division, United States Department of Labor, both of Washington, D. C., Dorothy M. Williams, Regional Atty., of San Francisco, Cal., Morton Liftin, of Washington, D. C., and George L. Clarke, of Baltimore, Md., Attys., Wage and Hour Division, United States Department of Labor, for appellant.

Bogle, Bogle & Gates and Edward G. Dobrin, all of Seattle, Wash., for appellee.

Before GARRECHT, STEPHENS, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

The Administrator sued to restrain violations of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. After hearing proof the court dismissed the suit, and the Administrator appeals. It is conceded that the Act, if applicable, was not complied with.

Appellee owns and operates a chain of nineteen retail shoe stores, fourteen of which are in Washington, three in Oregon, and two in Idaho. He maintains at Seattle a central office and warehouse or floor space[1] where the great bulk of the merchandise dealt in is received from out-state suppliers and from which it is distributed to the several stores, a minor part being shipped directly to the stores by the suppliers. After arrival in Seattle the goods are transported by a local transfer company to the warehouse where they are weighed, checked, unpacked, sorted, and repacked for distribution, about 30% being distributed to the stores in Oregon and Idaho, the balance to those in Washington. Except for a small reserve stock, the goods shipped to the Seattle warehouse are kept there only long enough to be prepared for transmission to the stores. The employees involved are those working in the central office and warehouse, namely, shipping and receiving clerks, and clerical, bookkeeping and maintenance employees.

Appellee's business is controlled from the Seattle office, the local store managers making daily sales reports and weekly stock reports, but having no authority over prices; and they purchase no merchandise. All financial transactions of the chain, such as the negotiation of advertising, leasing and insurance contracts, and the payment of wages and salaries, are handled from the Seattle office. Appellee sells only at retail, and he neither produces nor processes goods of any sort.

The trial court found as a fact that the receipt of the goods and their subsequent distribution through the Seattle warehouse did not involve interstate commerce, that is to say, that the employees there are not engaged in commerce. However, for purposes of decision we assume the contrary. Walling v. Jacksonville Paper Co., 317 U. S. 564, 63 S.Ct. 332, 87 L.Ed. 460; Kirschbaum Co. v. Walling, 316 U.S. 517, 519, 62 S.Ct. 1116, 86 L.Ed. 1638. Certainly those persons employed in and about the distribution of merchandise to the Oregon and Idaho stores were so engaged. But the court rested its judgment primarily on the proposition that the employees are excluded from the benefits of the Act by virtue of § 13(a)(2), which exempts "any employee engaged in any retail or service establishment the greater part of whose selling or servicing is in intrastate commerce."

The Administrator concedes, or, to put it more accurately, insists, that each separate store in the chain is a "retail establishment" of the type excluded by this provision. His point is that the system as a whole is not such an establishment, more particularly that the central office and warehouse constitute a separate unit or establishment where no retailing is done. He likens that unit to a wholesale house in that the functions performed there are comparable, he says, with those performed by the wholesaler.

Aside from some District Court decisions, there are but few cases dealing immediately with the point. The Court of Appeals of the Sixth Circuit in Allesandro v. C. F. Smith Co., 136 F.2d 75,[2] has held that employees engaged in comparable services for a grocery chain are excluded from coverage by § 13(a)(2). The Third

---

[1] Counsel for appellee call this place a "stockroom." The Administrator refers to it as a "warehouse," and we accept his nomenclature.

[2] Decided June 3, 1943.

Circuit in Walling v. American Stores Co., 133 F.2d 840, reached a contrary conclusion in respect of a somewhat similar chain store activity, but in that case the chain store operator produced or processed goods at its warehouses on an extensive scale. The services performed were thus related to the production of goods for commerce as well as to retailing. The two holdings are not necessarily in conflict. The point was present in Walling v. Goldblatt Bros., 7 Cir., 128 F.2d 778, but was not distinctly ruled upon. The Administrator attempts to distinguish the holding in Allesandro v. C. F. Smith Co., supra, on the ground that there the distribution center and the stores were all located in the same state; but for present purposes we see no relevancy in the distinction. Even if the warehouse employees be regarded as in interstate commerce, the court nevertheless thought they were excluded by force of § 13(a) (2).

It appears to us that the work of the employees in the present case is plainly incidental to the operation of a retail business. While in some respects the functions performed at the central warehouse are comparable with those performed by the traditional wholesaler, yet obviously the analogy is superficial and incomplete. Large retail department stores have central business offices and maintain warehouses or stock rooms where goods are received and from which they are distributed to the various departments. These may be in the same building as the selling departments or in a separate building. The mere physical separation of appellee's warehouse from the stores themselves can hardly be regarded as a controlling factor.

Whether appellee's stores constitute a single establishment or whether each, in appropriate circumstances, is to be regarded as a separate establishment, is a question we need not consider. All we decide is that the services involved were a mere incident to and an integral part of the operation of each store in the group. Since the selling of no store was substantially interstate, the employees in question are excluded from coverage by § 13(a) (2) of the Act.

Affirmed.

GARRECHT, Circuit Judge (dissenting).

Both on reason and authority, I believe that the judgment should be reversed.

There is no "dependable touchstone" by which the applicability of the statute in question can be determined. Kirschbaum v. Walling, 316 U.S. 517, 520, 62 S.Ct. 1116, 86 L.Ed. 1638. "The question of the Act's coverage depends on the special facts pertaining to the particular business." Walling v. Jacksonville Paper Co., 317 U. S. 564, 572, 63 S.Ct. 332, 337, 87 L.Ed. 460.

This being so, we must be careful to keep before us all the significant facts pertaining to the business of Block's Shoe Stores. While the majority opinion's statement of facts may be correct as far as it goes, there have been omitted a number of relevant bits that help make up the complex mosaic of the appellee's farflung chain system.

In the year ending July, 1941, the appellee's nineteen stores did more than a million dollars worth of business. The merchandise was shipped in chiefly from outside of the state manufacturers and from 88 to 90 per cent of the total goods purchased were shipped by rail to the Seattle warehouse and the rest to the stores directly. Shoes were shipped to the appellee's stores from the Seattle warehouse 80 miles north to Bellingham, Washington, 340 miles south to Eugene, Oregon, 650 miles east to Boise, Idaho, and 100 miles southwest to Aberdeen, Washington, as well as to many other distant points. Although the lower court found as a fact that the receipt of the goods and their subsequent distribution through the Seattle warehouse did not involve interstate commerce, the majority opinion properly holds otherwise, and rules that the warehouse employees were engaged in such commerce. I am assuming that when the majority opinion refers to the "warehouse" employees it includes also the employees in the central office, located in the same building. There has been no attempt in this case to distinguish between these two types of employees, who are the only ones to whom the present controversy relates.

The appellee concedes that he does not regard the central office and warehouse "as a retail store". While the nineteen retail stores are directed by the central office, which controls purchases, pay roll and personnel, each individual store is under the direction of a manager with authority to hire and discharge employees. The central office keeps a perpetual inventory for each store, and each store keeps its own perpetual inventory. Each store has a separate ledger for sales.

In 1941, a payment was made on a wholesale distribution tax levied by the State of Washington for a part of the business carried on at the warehouse.

The appellee contends that this business "is operated as one unified enterprise and is in its entirety a 'retail establishment', within the letter and spirit of section 13 (a) (2)", providing that the Fair Labor Standards Act shall not apply to any employee engaged in any retail establishment doing chiefly an intrastate business. Since the central office and warehouse is a necessary part of this "retail establishment", appellee claims that it too shares the same exemption that is enjoyed by the individual "outlets" or retail stores.

The appellant, on the other hand, while unreservedly agreeing that each of the appellee's stores is a "retail establishment", earnestly maintains that "the entire chainstore system is not a single establishment", and that, therefore, the office and warehouse employees, performing as they do "non-retail" functions, are not within the exemptive provisions of section 13 (a) (2).

This case should be considered in its proper "moral climate". That moral climate is the public policy that dictated the passage of the statute that we are called upon to construe. There is no mention of that public policy in the majority opinion, although the subject has been frequently discussed in recent decisions of the Supreme Court of the United States.

When Congress "came to deal with wages and hours, its primary concern was that persons should not be permitted to take part in interstate commerce while operating with substandard labor conditions." Southland Gasoline Co. v. Bayley, 319 U.S. 44, 48, 63 S.Ct. 917, 919, 87 L.Ed. 1244; United States v. Darby, 312 U.S. 100, 109, 110, 115, 657, 61 S.Ct. 451, 85 L.Ed. 609, 132 A.L.R. 1430. In other words, the statute is "humanitarian" and "remedial" in its purpose. Plunkett v. Abraham Bros. Packing Co., 6 Cir., 129 F.2d 419, 421; Consolidated Timber Co. v. Womack, 9 Cir., 132 F.2d 101, 106; Helena Glendale Ferry Co. v. Walling, 8 Cir., 132 F.2d 616, 619.

Being remedial in its character, the Act should be liberally construed "in accordance with its obvious intent and purpose." Helena Glendale Ferry Co. v. Walling, supra, 132 F.2d at page 619. "Only in this way can the coordination of our economic life and the elimination of unfair differentials in labor conditions be effectively achieved." Missel v. Overnight Motor Transp. Co., 4 Cir., 126 F.2d 98, 103, affirmed 316 U.S. 572, 62 S.Ct. 1216, 86 L. Ed. 1682. See also Fleming v. Hawkeye Pearl Button Co., 8 Cir., 113 F.2d 52, 56; Bowie v. Gonzalez, 1 Cir., 117 F.2d 11, 16; Wood v. Central Sand & Gravel Co., D.C., 33 F.Supp. 40, 43, quoted from by the appellee himself; Lorenzetti v. American Trust Co., D.C., 45 F.Supp. 128, 132, 133.

Conversely, the exemptions in an humanitarian statute should be strictly construed, to the end that only those persons clearly and specifically excepted from its remedial provisions shall enjoy immunity from its requirements.

In the Womack case, supra, 132 F.2d at page 106, referring to this same statute and to this same exemption we said: "It is elementary, of course, that the Act is remedial and that persons claiming to come within exemptions therein must bring themselves within both the letter and the spirit of the exceptions, which are subject to a strict construction."

See, also, Fleming v. Hawkeye Co., supra, 113 F.2d at page 56; Bowie v. Gonzalez, supra, 117 F.2d at page 16; Schneider v. Sports Vogue, Sup., 35 N.Y.S.2d 341, 346. Cf. Gregg Cartage & Storage Co. v. United States, 316 U.S. 74, 83, 62 S.Ct. 932, 86 L.Ed. 1283.

In connection with the majority opinion's well-founded concession that the warehouse employees were engaged in interstate commerce, it is significant that the Supreme Court has repeatedly held that "the provisions of the Act expressly make its application dependent upon the character of the employees' activities". Kirschbaum v. Walling, supra, 316 U.S. at page 524, 62 S.Ct. at page 1120, 86 L.Ed. 1638; Warren-Bradshaw Drilling Co. v. Hall, 317 U.S. 88, 90, 63 S.Ct. 125, 87 L.Ed. 83; Walling v. Jacksonville Paper Co., supra, 317 U.S. at pages 571, 572, 63 S.Ct. at pages 336, 337, 87 L.Ed. 460; Overstreet v. Northshore Corporation, 318 U.S. 125, 132, 63 S.Ct. 494, 87 L.Ed. 656; McLeod v. Threlkeld, infra, 319 U.S. 491, 63 S.Ct. 1248, at page 1252, 87 L.Ed. at page 1538.

The appellee insists, however, that the above holding applies only "to the problem of whether or not a particular employee is 'engaged in commerce or in the production of goods for commerce' ", and not to the exemption contained in Section 13 (a) (2). The Supreme Court does not, how-

ever, seem to have made any such distinction. In McLeod v. Threlkeld, 319 U.S. 491, 63 S.Ct. 1248, 1250, 87 L.Ed. 1538, 1542, note 6, decided on June 7, 1943, the court used the following language: "The contention that the work of the employee is covered by the exemption of Sec. 13 (a) (2)—'any employee engaged in any retail or service establishment the greater part of whose selling or servicing is in intrastate commerce'—seems without significance. *If the work is in interstate commerce, the exemption does not apply.*" (Emphasis added.)

Be that as it may, I do not think that in any event the exemption applies in the instant case, for the reason that neither the central office and warehouse nor the appellee's *business as a whole*—of which the former is a distinct unit—can properly be defined as a "retail establishment" within the reach of the exception. The central office and warehouse performs a quasi-wholesale and certainly a non-retail function. The entire *chain* or *business* or *industry* is not an "establishment", although each *link* or *outlet* or *store* may properly be so termed.

The exemption must be construed in the light of its purpose. And that purpose has been unequivocally pointed out by the Supreme Court. In Walling v. Jacksonville Paper Co., supra, 317 U.S. at page 571, 63 S.Ct. at page 337, 87 L.Ed. 460, the court said: "It is quite clear that the exemption in § 13(a) (2) was added to eliminate those retailers located near the state lines and making some interstate sales."

See, also, Walling v. Goldblatt Bros., 7 Cir., 128 F.2d 778, 783, certiorari denied 318 U.S. 757, 63 S.Ct. 528, 87 L.Ed. 1130.

The legislative history of section 13 (a) (2) indicates that Congress did not intend to exempt a "multi-state" business like the appellee's from the sweep of the Act. The original text of the amendment applied to "any retail industry", while the phraseology finally adopted was "any retail or service establishment". I cannot agree with the appellee's contention "that no one considered that the change in the phraseology of Mr. Celler's amendment adopted on the floor of the House in any way affected the exclusion of the 'retail industry'." It should not be assumed that Congress did a vain, idle and purposeless thing when it changed the broad, generic and sweeping term "industry" into the specific and limited word "establishment". Walling v. American Stores Co., 3 Cir., 133 F.2d 840,

844. To regard "establishment" as synonymous with "business", "enterprise" or "industry" "would be to do indescribable violence to the word 'establishment' in section 13 (a) (2)." Fleming v. American Stores Co., D.C., 42 F.Supp. 511, 521, 522, modified and affirmed, Walling v. American Stores, supra, 133 F.2d 840. See, also, Lorenzetti v. American Trust Co., supra, 45 F.Supp. at page 138.

In this connection, it is noteworthy that in June, 1941, the Administrator of the Wage and Hour Division of the United States Department of Labor issued an "Interpretative Bulletin", No. 6, paragraph 37 of which reads as follows: "The question has been raised as to the scope of the term 'establishment' in the case of chain-store systems, branch stores, groups of independent retailers organized to carry on business in a manner similar to chain-store systems, and retail or service outlets of large manufacturing or distributing concerns. In the ordinary case, each physically separated unit or branch store will be considered a separate establishment within the meaning of the exemption. *The exemption, however, does not apply to warehouses, central executive offices, manufacturing or processing plants, or other non-retail selling units which distribute to or serve stores. These are physically separated establishments which do not have the characteristics of retail or service establishments.*" (Emphasis added.)

It is well settled that interpretative bulletins of this kind "carry persuasiveness as an expression of the view of those experienced in the administration of the Act and acting with the advice of a staff specializing in its interpretation and application." Overnight Motor Transp. Co. v. Missel, supra, 316 U.S. at pages 580, 581, note 17, 62 S.Ct. at page 1221, 86 L.Ed. 1682, and cases cited.

As was said in Fleming v. A. B. Kirschbaum Co., 3 Cir., 124 F.2d 567, 572, affirmed, Kirschbaum v. Walling, supra, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638: "Typical retail establishments are grocery stores, drug stores, hardware stores and clothing shops."

See, also, Walling v. Goldblatt Bros., supra, 128 F.2d at pages 783, 784; Consolidated Timber Co. v. Womack, supra, 132 F.2d at page 107.

In Walling v. A. H. Phillips, D.C., 50 F. Supp. 749, 753, decided June 22, 1943, there was likewise involved a "central office and

warehouse", from which the Phillips "chain" of retail grocery stores in Massachusetts and Connecticut received their merchandise. Of such a receiving and distributing center the Court said: "With respect to the contention that the defendant was not a retail establishment, it seems plain from the legislative history that is so clearly set out in the American Stores case, that the defendant's warehouse and central office establishments could not be said to be a retail establishment 'comparable to the intrastate "local" or "corner grocery man", "druggist", "meat dealer", "filling-station man" or even "department store" about whom the legislators were concerned'. (page 844 of 133 F.2d)."

Again, in Great Atlantic & Pacific Tea Co. v. Morrissett, D.C., 58 F.2d 991, 993, affirmed without opinion 284 U.S. 584, 585, 52 S.Ct. 127, 76 L.Ed. 506, a retail grocery chain maintained a "distributing house" from which the corporation's multi-state stores were supplied. The State of Virginia sought to impose a "distributing house license tax" upon the corporation. There, too, it was argued that "a distributing house is merely a necessary incident or arm of the retail store system, and not taxable separately." Of this defense the court said: "It is contended that there is no real difference between complainant's distributing house and a place maintained by a large department store from which goods are supplied to the various departments of one store, and that to tax in the one case and not the other is discriminatory. We cannot agree with this contenton. The one is a place *corresponding to a wholesale house,* the other simply a storage house, and to classify them differently for purposes of taxation is well within the functions of the taxing power of the state." (Emphasis added.)

The appellee argues, of course, that the Morrissett case was one involving a taxing statute and therefore not helpful in considering the Act now before us, and cites the Kirschbaum Co. and Jacksonville Paper Co. decisions, supra, in support of its contention. It is clear, however, that in those decisions the remarks of the Supreme Court related to the definition of "interstate commerce", which the majority of this court in the instant case has settled in favor of the appellant. I do not interpret the Supreme Court's passing observations as indicating that it wished to overturn the well-settled principle that every

doubtful intendment of a taxing statute is to be construed in favor of the taxpayer. Anderson v. Morris & E. R. Co., 2 Cir., 216 F. 83, 89; State of Ohio v. Harris, 6 Cir., 229 F. 892, 898.

If, in the Morrissett case, the "distributing warehouse" was "a place corresponding to a wholesale house"—even though such, an interpretation involved a construction unfavorable to the taxpayer—a fortiori such a construction should be adopted by us if it means that a given case can reasonably be brought within the beneficent reach of the Fair Labor Standards Act.

It is significant that the court below relied, as authority for its decree, upon Fleming v. Goldblatt Bros., D.C., 39 F.Supp. 701, as "the one outstanding case previously decided by a court, which seems to be in point here." This "one outstanding case", however, was affirmed in part and reversed in part by the Seventh Circuit Court of Appeals, in Walling v. Goldblatt Bros., supra, 128 F.2d 778, 783, 784, certiorari denied 318 U.S. 757, 63 S.Ct. 528, 87 L.Ed. 1130. On the crucial point in the instant case—i. e., whether a farflung chain of stores is to be exempted under § 13 (a) (2),—the appellate court said: "Apparently the Act contemplates in some measure that purely local retail employers on or near a state line should not be included. Report of the Senate Labor Committee, Sen. Rep. No. 884, 75th Cong., 1st Sess. This limitation was aimed, apparently, at small local establishments which lie near a state line and those in a city lying within two states. [Case cited.] We do not believe that Congress intended to except a business such as defendant conducted. Defendant does not merely have a store in Chicago which happens to serve a few persons just over the line in Indiana. It has two stores in Indiana which serve only Indiana trade in very substantial amounts of goods brought from Illinois. This is no more local than if the outlets had been in Iowa, Wisconsin or Michigan. True, the Indiana stores are within some fifty miles of Chicago, but their activities would be in no wise different if they were many times that distance away.

"Further we think that such elimination of applicability was intended to include only ordinary retail stores, Fair Labor Standards Act of 1938, § 13(a) (2), 29 U.S.C.A. § 213 (a) (2), *and not a great establishment shipping goods out of the state to two of*

274

*its important outlets."* (Cases cited.) (Emphasis added.)

In view of the reviewing court's opinion, the lower court's "one outstanding case" has become a foundation a trifle unsure.

The foregoing quotation from the appellate court's opinion also seems to dispose of the present majority opinion's assertion that the point in which we are interested was "present" in the Goldblatt case on appeal, "but was not distinctly ruled upon". To my understanding, the appellate court in that case expressed its view of the law pertinent to the instant case in language that placed its conclusions beyond cavil.

The majority of this court, on the other hand, seems to rely chiefly upon the case of Allesandro v. C. F. Smith Co., 6 Cir., 136 F.2d 75. The appellant's objections to the applicability of the Smith case are brushed aside by saying: "The Administrator attempts to distinguish the holding in Allesandro v. C. F. Smith Co., supra, on the ground that there the distribution center and the stores were all located in the same state; but for present purposes we see relevancy in the distinction. Even if the warehouse employees be regarded as in interstate commerce, the court nevertheless thought they were excluded by force of § 13 (a) (2)."

The Smith Co. decision clearly shows that the court there regarded the question of *interstate commerce employment* as pivotal: "Our conclusion is that the present case must be aligned with Walling v. Goldblatt Bros., supra, in respect to employees *not* engaged in the movement of goods from interstate carriers." 136 F.2d page 78. (Emphasis added.)

Reference to the Goldblatt decision discloses in what respect the court in the Smith Co. decision was following the Goldblatt holding: "We conclude that those employees who order and procure, those who unload goods from without the state, at defendant's warehouses, those who check them before they are deposited on the unloading platform, those who manufacture goods at the warehouses, those engaged in maintaining, operating, caring for and servicing warehouses *where production for commerce occurs,* and those who pack and ship goods to Indiana from the warehouses *are within the Act. Those employees, however, who are concerned solely with storage in the warehouses and in delivery of goods to the Illinois stores and those printing and preparing record books,*

*memoranda, and advertising copy are not subject to the Act."* (Emphasis added.) (128 F.2d at page 784.)

From this it can be seen that in the Goldblatt case and consequently in the Smith Co. case the court *was* concerned with the question of whether or not the employees involved were or were not engaged in interstate commerce. In the instant case, the majority of the court concedes that the Seattle warehouse employees were engaged in commerce. Rightly construed, the Smith Co. decision does not support the majority opinion.

It is not difficult to conceive of a single non-retail unit in the midst of a group of retail establishments. As was said in Fleming v. American Stores Co., supra, 42 F.Supp. 511, 521: "It does not follow that because a unit of an enterprise is a component or necessary part of that enterprise, * * * it is to be so regarded as part and parcel of the whole enterprise as to lose its individual and separate identity as an establishment."

Courts should not be reluctant to apply the salutary and beneficent provisions of the Fair Labor Standards Act whenever this can be accomplished without doing violence to the language of the statute itself. For that law furnishes added proof that the American way is the way of humanitarianism and social betterment.

The decree of the court below should be reversed.