**WALLING, Administrator of the Wage and Hour Division, U. S. Department of Labor, v. GOLDBLATT BROS., Inc.**

No. 1582.

District Court, N. D. Illinois.
July 11, 1944.

Irving J. Levy, of Washington, D. C., and Frank Delany, of Chicago, Ill., for plaintiff.

Pritzker & Pritzker, Taylor, Miller, Busch & Boyden, and Morris I. Leibman, all of Chicago, Ill. (Stanford Clinton, of Chicago, Ill., of counsel), for defendant.

SULLIVAN, District Judge.

This cause was originally instituted on April 16, 1940, by the Administrator of the Wage and Hour Division of the United States Department of Labor, under Section 17 of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 217, to restrain the defendant from violating certain provisions of the Act. On the previous trial this court, 39 F.Supp. 701, found as a matter of law that defendant's employees were not engaged in commerce or in the production

of goods for commerce, as those terms are used in the Act, 29 U.S.C.A. § 201 et seq., and entered findings of fact and conclusions of law, together with a decree dismissing the complaint. On appeal the Circuit Court of Appeals, 7 Cir., 128 F.2d 778, 784, affirmed in part and reversed in part the decision of this court and remanded the case "for such findings as ought to be made and such judgment as should be entered after the evidence has been heard, in accordance with the announcements of this opinion."

Section 6 of the Fair Labor Standards Act provides for the payment of prescribed minimum rates of pay to each employee engaged in commerce or in the production of goods for commerce. For one year following October 24, 1938, the effective date of the statute, the minimum rate of pay prescribed was twenty-five cents per hour; and on October 24, 1939, the minimum rate was raised to thirty cents an hour.

Section 7 prohibits an employer from employing employees engaged in commerce, or in the production of goods for commerce, longer than forty-four hours per week during the first year from the effective date of the Act; forty-two hours during the second year; and forty hours after October 24, 1940, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

Section 13(a) provides that:

"The provisions of sections 6 and 7 shall not apply with respect to (1) any employee employed in a * * * local retailing capacity * * *; or (2) any employee engaged in any retail or service establishment the greater part of whose selling or servicing is in intrastate commerce."

Section 15(a) (1) makes it unlawful for any person "to transport, offer for transportation, ship, deliver, or sell in commerce, or to ship, deliver, or sell with knowledge that shipment or delivery or sale thereof in commerce is intended, any goods in the production of which any employee was employed in violation of sections 6, or section 7 * * *",

Section 15(a) (2) makes it unlawful for any person to violate any of the provisions of Sections 6 or 7.

Section 17 vests in the District Courts of the United States jurisdiction to restrain violations of Section 15.

In its amended answer to the original complaint defendant admitted non-compliance with Sections 6 and 7 on the ground that none of its activities were in commerce or constituted the production of goods for commerce, and now insists that all of its warehouse employees who are engaged in handling and shipping merchandise are employed in accordance with the standards set up in the Act, and have been so employed for approximately the past three years. That the bakery processing employees are paid pursuant to a collective bargaining agreement which is in accord with the provisions of the Act. Fleming v. A. H. Belo Corp., 5 Cir., 121 F.2d 207. That all of the office employees are paid on a weekly salary basis which is in excess of the minimum provided by the Act, and that since the commencement of this litigation all employees have had their compensation increased and their workweek hours decreased.

The evidence shows that defendant is an Illinois corporation owning and operating at the present time fourteen department stores and one drug store, six warehouses and one bakery. Nine of the stores, including the drug store, are located in Chicago, one in Joliet, one each in Hammond, Gary and South Bend, Indiana, Milwaukee, Wisconsin, and Buffalo, New York. The evidence indicates that only a small percentage of goods is shipped from defendant's warehouses in Illinois to its stores in South Bend, Milwaukee and Buffalo. Its department stores sell at retail the variety of items customarily found in modern department stores, including food products, candy, drugs, toys, books, jewelry, liquor, dry goods, wearing apparel, shoes, household furnishings, furniture, hardware, and automobile accessories.

All of the merchandise handled by defendant is received at its warehouses and then distributed to its various department stores. Merchandise is usually received at the Wentworth, 63rd, and Iron Street warehouses in carload or truckload lots. Defendant's traffic manager testified that about fifty-three per cent of all merchandise purchased by defendant is in carload lots, and about ninety per cent is shipped directly to its warehouses. Merchandise is received daily at each warehouse and from there transferred daily to the retail stores in Illinois and Indiana, it being the practice of defendant to move the merchandise from the warehouses to the retail stores as rapidly as possible, one witness testifying that

the greater part of the merchandise received at the warehouses is transferred to the retail stores the same day. Certain of, defendant's employees at each warehouse unload and check the merchandise upon arrival, after which it is transferred to the retail stores or retained in the warehouse until called for by the retail stores.

█ When this case was before the Circuit Court of Appeals, Walling v. Goldblatt Bros. Inc., 7 Cir., 128 F.2d 778, that Court determined that the following employees were engaged in commerce or in the production of goods for commerce: Those having anything to do with the procurement of extrastate goods, those checking and unloading the extrastate goods, and those connected with the distribution of goods to the out-of-state stores. If, however, it develops that these employees are employed in a retail establishment the greater part of the selling of which establishment is in intrastate commerce, or that these employees are engaged in a local retailing capacity, then they too are exempt from the provisions of the Act.

The immediate question before the court therefore is whether defendant's employees are employed in a retail establishment, the greater part of the selling of which establishment is in intrastate commerce. Plaintiff concedes that at least ninety per cent of defendant's sales are in intrastate commerce leaving for the court only the question of whether or not defendant is engaged in operating a retail establishment.

The Administrator insists that the word "establishment" means a single store where goods are sold at retail, and therefore would not include defendant's warehouses and bakery. In his Interpretative Bulletin No. 6 he sets out the scope and applicability of the exemption provided by Section 13(a) (2) of the Fair Labor Standards Act of 1938 with reference to retail establishments as follows:

"33 * * * The word 'establishment' as used in Section 13(a) (2) usually means a physical place of business * * *."

"34 * * * The term 'establishment' is not synonymous with the words 'business' or 'enterprise' as applied to multi-unit companies * * *. Each physically separated place of business must be considered as a separate establishment, and the applicability of the exemption depends upon whether the particular establishment possesses the

characteristics of a retail * * * establishment."

"37. The question has been raised as to the scope of the term 'establishment' in the case of chain-store systems, branch stores, groups of independent retailers organized to carry on business in a manner similar to chain-store systems. * * * In the ordinary case, each physically separated unit or branch store will be considered a separate establishment within the meaning of the exemption. The exemption, however, does not apply to warehouses, central executive offices, manufacturing or processing plants, or other nonretail selling units which distribute to or serve stores. These are physically separated establishments which do not have the characteristics of retail * * * establishments."

The Administrator's conclusion as to the scope and applicability of the exemption provided by Section 13(a) (2) of the Fair Labor Standards Act of 1938 with reference to retail establishments has been passed upon by the Circuit Courts of Appeal for the sixth, seventh and ninth Circuits. In the case of Allesandro v. C. F. Smith Co., 6 Cir., 136 F.2d 75, 76, defendant was a retailer who operated a grocery chain system with several hundred retail grocery and meat stores, all within the State of Michigan. The court in disposing of that case said:

"For efficient and economic servicing of its retail stores it maintains a number of warehouses, its principal warehouse consisting of several buildings occupying a city block through which runs a spur track upon which are shunted freight cars bringing goods from out of the State. In addition, the appellee receives shipments at other railroad sidings and depots. The goods thus received either are transported directly by trucks to the units of the chain, or placed in the warehouses for later distribution to the stores. Goods move out of the warehouse pursuant to orders of individual store managers. Upon receipt of such orders from the stores, the stock clerks in the warehouse set aside the merchandise called for. It is then sent down chutes to the main floor where the various items are assembled in piles under appropriate store numbers, to be loaded on trucks for delivery to the stores. Some of the appellants are engaged in delivering goods directly from the box cars to the stores, others make deliveries from the warehouse

to the stores, as need arises, and some do both."

" * * * no principle known to us requires distinction to be drawn * * . * between a business occupying a single store and one utilizing several or many retail outlets for the sale of its goods. * * * The sole business of the Smith Company is retailing and its warehousing of merchandise without other purpose than to provide for necessary and economical distribution of merchandise to its stores for sale at retail. * * *

"As applicable to the activities of the Smith Company, we perceive no ambiguity in the statute which requires resort to legislative history to resolve. The Smith business is a retail business, its goods are acquired by a local merchant for local disposition and differ not at all from those of the corner grocery except in volume and perhaps in selling price."

In Walling v. L. Wiemann Co., 7 Cir., 138 F.2d 602, 606, the defendant conducted a multi-unit enterprise consisting of twelve stores in Milwaukee and one store each in Fond du Lac, Green Bay, Racine and Madison. It also owned and operated a building physically separated from any of its retail outlets in which the company's general office and warehouse activities were carried on for the entire chain. Eighty to eighty-five per cent of all merchandise purchased by the company came from outside the State of Wisconsin, and ninety per cent of the company's merchandise was supplied by manufacturers rather than wholesalers or jobbers. Judge Sparks in speaking for a unanimous court said:

"The words of the statute are plain and unambiguous. Subsection (a) provides that sections 206 and 207 of the Act shall not apply with respect to '(1) any employee employed in a bona fide executive, administrative, professional, or local retailing capacity, or in the capacity of outside salesman (as such terms are defined and delimited by regulations of the Administrator); or (2) any employee engaged in any retail or service establishment the greater part of whose selling or servicing is in intrastate commerce; * * *.' "

"It should be noted that the Administrator is not authorized to delimit by regulation any of the terms in this subsection, except those contained in subdivision 1. However, he has not, by Bulletin 6, attempted to define or delimit any word or term in that subdivision, but by the parenthetical clause in that subdivision he assumed authority to define and delimit the plain and unambiguous words of subdivision 2 by promulgating the order that the 'unit store' constitutes the retail or service establishment contemplated by the exemption; and rules that the word 'establishment' used in subsection (a) (2) refers to a physical place of business and is not synonymous with the words 'business' or 'enterprise' as applied to multi-unit companies. Hence, he concludes that the exemption here claimed does not apply to warehouses, central executive offices, or nonretail selling units which distribute to or serve the unit retail stores. * * *

"We are unable to perceive the source of appellant's authority for ruling that the word 'establishment,' as used in the Act, refers to a physical place of business and does not refer to a 'business or enterprise as applied to multi-unit companies,' dealing wholly in intrastate business, and does not apply to appellee's warehouse and central executive offices, although the District Court found that such warehouses and offices constitute component and necessary parts of appellee's unitary business. The District Court found nothing in the Act, nor do we, to indicate such intention on the part of Congress, nor any language therein which would permit such construction. We recognize the right and duty of the Administrator to construe the language of Congress, in Acts pertaining to his department, if such language is fairly subject to more than one interpretation, but where the meaning is definite and clear, and the language is not fairly subject to more than one interpretation, it cannot be altered in any manner except by Congressional action, certainly not by administrative or judicial legislation."

In Walling v. Block, 9 Cir., 139 F.2d 268, 270, certiorari denied March 27, 1944, 321 U.S. 788, 64 S.Ct. 787, the defendant retailer operated a chain of nineteen retail shoe stores, fourteen of which were located in the State of Washington, three in Oregon and two in Idaho. A central office and warehouse was maintained in Seattle, Washington. Eighty-five to ninety per cent of the merchandise dealt in came from outside of the state and was distributed to the several retail stores. Approximately thirty per cent of the merchandise was distributed to the stores in Oregon and Idaho, the balance to those in Washington. The general management and administration of the

business was conducted from the Seattle offices. A divided court held that the employees were excluded by Section 13(a) (2) of the Act, saying:

"It appears to us that the work of the employees in the present case is plainly incidental to the operation of a retail business. * * * Large retail department stores have central business offices and maintain warehouses or stock rooms where goods are received and from which they are distributed to the various departments. These may be in the same building as the selling departments or in a separate building. The mere physical separation of appellee's warehouse from the stores themselves can hardly be regarded as a controlling factor.

" * * * All we decide is that the services involved were a mere incident to and an integral part of the operation of each store in the group. Since the selling of no store was substantially interstate, the employees in question are excluded from coverage by § 13(a) (2) of the Act."

In the instant case it is true that large scale activities and services are performed by defendant's employees at the warehouses, but it is agreed that certain of such activities and services are essential to the making of sales to retail customers, and are therefore exempt, such as finishing, servicing, preparation for delivery and the like. In addition defendant carries on various other activities which plaintiff insists are in no sense essential to the making of its retail sales, such as the baking of bread, manufacturing of drapes, purchase of fresh fruits and vegetables at its produce warehouses and distribution of them to its Illinois and Indiana stores. Defendant on the other hand contends that such servicing and manufacturing processes as it carries on are closely related to and incidental to its retail business. Witnesses from the various State Street stores testified that all modern retail department stores customarily perform retail processing on an extensive scale. Plaintiff maintains that defendant's employees in the warehouses, the bakery and the executive offices are not employed in a retail establishment and therefore they are not exempt from the coverage of the Act, relying principally on the case of Walling v. American Stores, 3 Cir., 133 F.2d 840, and Walling v. A. H. Phillips, D.C., 50 F.Supp. 749. In the American Stores case the defendant performed a multitude of operations which in no interpretation of the word could be

considered as retail in character. It operated two canneries, a bottling works, a plant where it manufactured such things as gelatin, tapioca and spices. It operated a dairy in Wisconsin, a produce business in Minnesota, and a coffee plantation in Columbia. Sales were made not only to the public but to subsidiary and controlled corporations which were separate legal entities. The court in that case held, and I think correctly, that the American Stores was more than a retail establishment, and that the warehouses and other activities were not mere adjuncts of the retail establishment, but was each a separate business, with separate employees.

In the instant case the defendant has a completely centralized and unified management which stems from its general offices located on the upper floors of its State Street store. No internal sales of any kind are made. Merchandise is merely transferred and allocated among the various retail stores, as convenience and efficient operation of the business requires. Only one set of books is kept for the entire enterprise, and all units of the business are connected by one internal telephone system. Employees are engaged in essential retail activities which while covering parts of two states, are all located within the metropolitan area of Chicago, while in the Block case, supra, defendant transferred merchandise to its various retail stores some of them located in other states many hundreds of miles distant. In the case of Walling v. Fred Wolferman, Inc., 54 F.Supp. 917, decided by the District Court of Missouri, the facts are almost identical with the facts in the instant case, and the court there held that the business of defendant was a single retail and service establishment.

I thoroughly agree with the conclusions reached in the above cases and believe that they settle that the exemption provided by Section 13(a) (2) applies to defendant's stores and warehouses. I cannot help but conclude that Congress meant what it said when it provided that employees of retail establishments, the greater part of whose selling is in intrastate commerce are exempt from the provisions of the Act, regardless of whether the retailer operates one retail store or a multi-unit establishment with segregated warehouses.

Section 13(a) (1) of the Act provides that the wage and hour standards contained in the Act shall not apply to "any employee employed in a bona fide * * * local re-

tailing capacity * * * (as such terms are defined and delimited by the regulations of the Administrator)." The Administrator, under Title 29, Labor, Chapter 5, Wage and Hour Division, Section 541.4 issued the following regulation defining these terms:

"The term 'employees employed in a bona fide local retailing capacity' in Sec. 13(a) (1) of the Act shall mean any employee (a) who customarily and regularly is engaged in (1) making retail sales the greater part of which are in intrastate commerce; or (2) performing work immediately incidental thereto, such as the wrapping or delivery of packages, and (b) whose hours of work of the same nature as that performed by nonexempt employees do not exceed twenty per cent of the number of hours worked in the work-week by such nonexempt employees."

I am of the opinion that the evidence shows that all of defendant's employees in the instant case are engaged in a local retailing capacity as the term is defined and delimited by the Administrator. All of defendant's employees are engaged either in making retail sales or in performing duties which are customarily performed by retailers, and which are not only incidental to but an indispensable part of the making of defendant's retail sales. In Interpretative Bulletin No. 6, on Retail Establishments, Par. 26, page 11, the Administrator sets out that:

"The large department store normally is a complicated enterprise engaged in retail selling. It carries a wide variety of lines of merchandise which are ordinarily segregated or departmentalized not only as to location within the store, but also as to operation and records."

In Paragraph 17 on page 5 of the same Bulletin the Administrator says:

"Processing incidental to retail selling ordinarily will not alter the retail character of the establishment and defeat the exemption."

■ I am of the opinion that the Administrator has so defined and delimited the words "employees employed in a bona fide * * * local retailing capacity" as to exempt and exclude from the operation of the Act all of defendant's employees. The Court finds as a matter of law that defendant is operating a retail establishment within the meaning of Section 13(a) (2) and that all of its employees are employed in a

local retailing capacity within the meaning of Section 13(a) (1) and are therefore not subject to the Act. Plaintiff's request for an injunction is denied and the complaint is dismissed.